DECISION AND JOURNAL ENTRY
{¶ 1} The State of Ohio appeals from a decision of the Summit County Court of Common Pleas suppressing evidence against Defendant, Curtis Grier. We reverse the decision of the trial court and remand for proceedings consistent with this opinion.
 {¶ 2} Defendant was indicted for trafficking in marijuana in violation of R.C. 2925.03(A)(2), obstructing justice in violation of R.C.2921.32(A)(1), possessing criminal tools in violation of R.C. 2923.24(A), and possession of marijuana in violation of R.C. 2925.11(A). On March 22, 2004, Defendant filed a motion to suppress, alleging that evidence seized was the result of an illegal search and seizure. The trial court conducted an evidentiary hearing, and on May 27, 2004, the trial court granted Defendant's motion to suppress all evidence seized from 543 Euclid Avenue in Akron, Ohio.
 {¶ 3} The State appeals the trial court's order, raising one assignment of error for our review.
 ASSIGNMENT OF ERROR
"The trial court committed error when suppressing the evidence in this case."
 {¶ 4} In its sole assignment of error, the State of Ohio maintains that the trial court erred in suppressing evidence found at 543 Euclid Avenue. We agree.
 {¶ 5} The seizure of the evidence at issue stemmed from police efforts to arrest a known gang member with outstanding warrants out for his arrest. On November 21, 2003, during roll call, every officer in the Akron police department was given an information sheet with Toi Caldwall's picture on it and told that he was supposed to be considered armed and dangerous. They were informed that Mr. Caldwall had outstanding warrants for his arrest and that Mr. Caldwell "was not planning on going back to prison, that he was going to shoot it out with the police."
 {¶ 6} On the evening of November 21, 2003, a lady called the police, saying that Mr. Caldwall had been at her house. He had been asking about her son, and he got mad at her, kicked her dog, and left. The lady told the police where Mr. Caldwall lived. Five or six police cruisers responded to the call. Officer Michael Williams was driving the first of the police cruisers that were going to attempt to arrest Mr. Caldwell. Officer Williams observed Mr. Caldwell standing on the porch of Defendant's house at 543 Euclid Avenue. When Mr. Caldwell saw the police, he turned and ran into the front door of Defendant's house.[1]
 {¶ 7} Some of the officers surrounded 543 Euclid Avenue while Officers Criss and Webb followed Mr. Caldwell into the house. The officers lost sight of Mr. Caldwell but, while in the house, they noticed several small children. Ms. Grier, Defendant's mother, confronted the officers. Officer Criss was explaining to Ms. Grier that they were looking for Mr. Caldwell when he heard a commotion on the front porch.
 {¶ 8} When Officer Kelly had tried to enter the house, Defendant put his body by the front door and balled up his fists telling the officer "[y]ou are not going in there." Officer Kelly, fearing for the safety of the other two officers in the house with Mr. Caldwell, arrested Defendant for obstructing justice so that he could go to the aid of the officers inside of the house. While Defendant was being arrested and Officer Criss was talking to Ms. Grier, Officer Williams arrested Mr. Caldwell as he exited 543 Euclid Avenue from a side door.
 {¶ 9} After Defendant and Mr. Caldwell had been arrested, Officer Kelly and Officer Criss spoke to Ms. Grier. They explained to her who Mr. Caldwell was, why they were looking for him, and told her of his violent nature. They let her know that they thought he may have left weapons in the house and asked her permission to search for those weapons. Officer Criss testified that Ms. Grier had given them permission to search the house and actually escorted them into the basement area.[2]
While they were in the basement, Officer Kelly noticed a safe on the bar and a lot of marijuana residue around that safe, along with a baggie of marijuana. Ms. Grier explained that the safe did not belong to her; it belonged to her son, Defendant.
 {¶ 10} Officer Kelly went outside to speak to Defendant, and Defendant admitted that the safe was his. He told Officer Kelly that "[t]he safe was filled with marijuana." Defendant agreed to open the safe. The officers escorted him inside of the house, but then Defendant changed his mind and told them that they would need a search warrant to open the safe. The officers went to speak to their supervisor, Sergeant Zimmerman. They determined that they would take the safe, issue a property receipt for it, take it to the station, and wait until a search warrant could be obtained. The police obtained a search warrant, opened the safe, and found marijuana therein.
 {¶ 11} Based on the evidence found in the safe, Defendant was re-arrested on November 24, 2003, for trafficking in marijuana, possessing criminal tools, and possession of marijuana. On March 22, 2004, Defendant filed a motion to suppress the evidence. At the evidentiary hearing on that motion, Defendant claimed that the evidence the officers obtained while at his house was inadmissible. Ms. Grier testified that she had not consented to the police searching her house. Ms. Grier's testimony regarding consent was directly in conflict with the testimony of the police officers who claimed that she consented to their searching the house. The trial court granted Defendant's motion to suppress the evidence, finding that it had been illegally obtained. The court held that there was no consent for the police to enter or remain in Defendant's home or to search the premises following Mr. Caldwell's arrest, and, thus, suppressed the evidence found as a result of the search conducted after Mr. Caldwell's arrest.
 {¶ 12} A trial court makes both factual and legal findings when ruling on a motion to suppress. State v. Jones, 9th Dist. No. 20810, 2002-Ohio-1109, at ¶ 9. An appellate court is to accept the trial court's findings of fact that are supported by credible evidence, as the trial court is in the best position to evaluate questions of fact, credibility, and weight of the evidence. State v. Miller (May 23, 2001), 9th Dist. No. 20227, at 5.
 {¶ 13} In this case, we are evaluating two separate entries into Defendant's house. The initial entry we find to be legal under the hot pursuit exception to the warrant requirement. The police may lawfully enter a private residence without a warrant if the entry was made upon exigent circumstances. State v. Applegate (1994), 68 Ohio St.3d 348, 349. A common breed of exigent circumstances is when an officer is in hot pursuit of a suspect. See United States v. Radka (1990), 904 F.2d 357,361. When evaluating the exigencies of entering a home a totality of circumstances approach is taken. Id.
 {¶ 14} The initial entry into Defendant's home occurred as the officers were attempting to arrest a known felon, pursuant to a valid arrest warrant. Mr. Caldwell, whom they were chasing, was known to be armed and dangerous. He attempted to escape the police by fleeing into Defendant's house. The Officers were justified in chasing Mr. Caldwell into Defendant's house without a warrant. A suspect may not avoid arrest simply by outrunning the police and entering a residence. United Statesv. Santana (1976), 427 U.S. 38, 42-43, 96 S. Ct. 2406, 49 L.Ed.2d 300. "[A] suspect may not defeat an arrest which has been set in motion in a public place * * * by the expedient of escaping to a private place." Id. at 43. Thus, we find that the initial entry into Defendant's house was valid.
 {¶ 15} As to the second entry, the police had entered Defendant's house to search for weapons Mr. Caldwell may have left while in the house. The trial court noted in its journal entry that both the prosecution and the defense gave credible evidence on the issue of consent as to the second entry. Ms. Grier testified that she did not consent to the search of her home, while the officers testified that she had, in fact, consented. The trial court noted that "the state must show by `clear and positive' evidence that the consent was `freely and voluntarily' given based on the totality of the circumstances," quotingState v. Cooper, 9th Dist. No. 21494, 2003-Ohio-5161, ¶ 12. Finding that the evidence presented of consent was equal to that of the contrary evidence, the trial court held that "the prosecution fail[ed] to tip the scales enough in their favor to prove consent with a sufficient preponderance," and, thus, there was no consent for the police to enter Defendant's home following Caldwell's arrest.
 {¶ 16} The State argues that the police were legally allowed to search Defendant's home for weapons that Mr. Caldwell may have placed there under the public safety exception to the warrant requirement. When considering a motion to suppress, a trial court is in the best position to resolve factual questions and evaluate the credibility of witnesses.State v. Mills (1992), 62 Ohio St.3d 357, 366. However, an appellate court determines, without deference to the trial court, whether the court has applied the appropriate legal standard. State v. Anderson (1995),100 Ohio App.3d 688, 691. In this case, we find that the trial court centered its determination to suppress the evidence around the issue of consent rather than the public safety exception to the warrant requirement.
 {¶ 17} We note that searches and seizures inside a private home without a warrant are presumptively unreasonable. Payton v. New York
(1980), 445 U.S. 573, 586, 63 L.Ed.2d 639. Absent exigent circumstances, a search warrant is required to enter a private home. State v. Jacobs
(May 31, 1995), 9th Dist. No. 16916, at 4. "Exigent circumstances `means generally that the delay associated with securing a warrant would result in endangering police officers or other individuals or would result in concealment or loss of evidence.'" State v. Willis (July 27, 1994), 2nd Dist. No. 14276, quoting Katz, Ohio Arrest Search and Seizure, (3 Ed.) 155.
 {¶ 18} In this case, the Akron Police officers testified that they had entered the home to follow Mr. Caldwell, a gang member who, they had been told, was to be considered armed and dangerous. Upon entering the house, they noticed, in addition to Ms. Grier, her daughter and Defendant, four or five small children. The officers lost site of Mr. Caldwell for a few minutes inside Defendant's home. Caldwell was arrested as he came out the side door of Defendant's house, which led to the stairs to the basement of the house. The officers testified that they had told Ms. Grier that they wished to trace Mr. Caldwell's path inside her house to search for weapons. The officers testified that they were worried that Mr. Caldwell may have left firearms in the house that could have posed a danger to the children or others in the house. A delay to get a search warrant in this case could have posed a serious threat to the safety of the children in the house if they were to have found a firearm first.
 {¶ 19} In State v. Hoyer (1986), 30 Ohio App.3d 130, 131, we held that public safety concerns permitted a warrantless search of a car where the police believed that there was an unattended gun in the car which could be readily accessible to vandals and thieves. "[T]he officer was justified in going to the car in order to remove the gun from its vulnerable and dangerous position." Id., citing, generally, Cady v.Dombrowski (1973), 413 U.S. 433, 37 L.Ed.2d 706.
"In situations in which the facts indicate to an officer that a gun is loose in a public area or in an unattended automobile, which is subject to intrusion by vandals or thieves, the public safety concerns involved justify an easing of both the Miranda requirements and the requirements for search and seizure." Hoyer, 30 Ohio App.3d at 131.
 {¶ 20} While the situation at hand involves a warrantless search of a house and not a car, this court has extended the public safety exception to situations where there is an overriding need to rescue people whose lives are in danger. State v. Taylor (Dec. 16, 1992), 9th Dist. Nos. 92CA005313 and 92CA005314, at 5. `"The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'" Mincey v. Arizona (1978),437 U.S. 385, 392-393, 57 L.Ed.3d 290, quoting Wayne v. United States
(1963), 318 F.2d 205, 212. Police officers are not required to delay in the course of an investigation if to do so would endanger the lives of others. Warden, Maryland Penitentiary v. Hayden (1967), 387 U.S. 294,298-299, 18 L.Ed.782. In this case, officers believed that a firearm was left in Defendant's house where it could be accessed by four or five small children, thus putting their lives in jeopardy.
 {¶ 21} The officers who searched Defendant's house traced the path that they believed Mr. Caldwell had taken in the house. See Terry v.Ohio (1968), 392 U.S. 1, 25-26, 20 L.Ed.2d 889. The marijuana that the officers saw was in plain view and the presence of it was within "plain smell." See State v. Moore (2000), 90 Ohio St.3d 47. Since the officers were lawfully in Defendant's house, evidence found in plain view, or within plain smell should have been admitted. State v. Kinley (1995),72 Ohio St.3d 491, 495, see, also, State v. Cunningham, 2nd Dist. No. 20059, 2004-Ohio-3088, ¶ 12.
 {¶ 22} Defendant does not deny that the presence of marijuana was in plain view and plain smell. "Under [the plain view] doctrine, an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was `immediately apparent' that the item was incriminating." State v. Waddy (1992), 63 Ohio St.3d 424, 442, quoting Coolidge v. New Hampshire (1971), 403 U.S. 443, 466,29 L.Ed.2d 564.
 {¶ 23} Officer Kelly testified that as soon as he had gotten to the bottom of the basement stairs to search for possible weapons that Mr. Caldwell may have left, he noticed a bar in the basement that was "covered with leaves, seeds, and pieces of stem marijuana." He also noticed a baggie with marijuana residue in it and a safe that had a fresh smell of marijuana. Officer Kelly stated that he had over eleven years of training and experience on the identification of marijuana and that he recognized the marijuana in the basement right away.
 {¶ 24} We find that since the police officers were justified in searching Defendant's home for possible firearms left there by Mr. Caldwell that could have posed a significant threat to the four or five small children in the house, and since, in searching Mr. Caldwell's path inside the house, they found marijuana in plain view and in plain smell, the evidence against Defendant should have been admitted.
 {¶ 25} We affirm the State's assignment of error, reverse the decision of the Summit County Court of Common Pleas, and remand for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Carr, J., Whitmore, J. Concur
[1] Caldwell did not live with Defendant at 543 Euclid Avenue. Caldwell was a neighbor.
[2] Ms. Grier testified that she did not give the officers permission to search her house.