The STATE of Ohio, Appellee,

v.

SHARPE, Appellant.

[Cite as State v. Sharpe, 174 Ohio App.3d 498, 2008-Ohio-267.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 07CA46.

Decided Jan. 25, 2008.

502

Stephen Schumaker, Clark County Prosecuting Attorney, Amy M. Smith, Assistant Prosecuting Attorney, for appellee.

Jon Paul Rion, for appellant.

GRADY, Judge.

{¶ 1} Defendant, Jeffrey Sharpe, appeals from his conviction for possession of cocaine and the sentence imposed for that offense pursuant to law. Sharpe's conviction was entered on his plea of no contest, following the trial court's denial of his motion to suppress evidence seized by police in their search of Sharpe's residence pursuant to a warrant.

{¶ 2} Sharpe argues on appeal, as he did in the trial court, that the search warrant was fatally tainted and that the evidence seized on the authority of the warrant must be suppressed, because the facts averred in the affidavit on which the search warrant was issued were obtained in a prior warrantless search of Sharpe's home by police that was illegal. The trial court rejected that contention, finding that one or more exceptions to the Fourth Amendment warrant requirement apply to the prior warrantless search. We do not agree and, accordingly, we will reverse Sharpe's conviction and sentence and remand the case for further proceedings.

{¶ 3} Evidence introduced at the hearing on Sharpe's Crim.R. 12(C)(3) motion to suppress evidence demonstrates that on August 12, 2005, officers of the Springfield Police Division were dispatched at about 6:00 a.m. to 861 Bellevue Avenue in Springfield on a domestic-violence complaint. When officers arrived there, they were met by Stephanie McConnaghey, who identified herself as Sharpe's girlfriend and that location, a single-family home, as Sharpe's residence. McConnaghey reported to police that she was the victim of an act of domestic violence that Sharpe had committed. Sharpe was not then present at the residence. After taking McConnaghey's complaint, police left and subsequently obtained warrants for Sharpe's arrest on a domestic-violence charge.

{¶ 4} At around 7:30 a.m. on that same date, police received a call indicating that Sharpe was at another location in Springfield, 18 ½ North Jackson Street, and that Sharpe had a gun and was threatening to commit suicide.

{¶ 5} Police received a third call concerning Sharpe at around 9:00 a.m. on that same date. The caller reported that Sharpe was seen entering his residence at 861 Bellevue Avenue through a rear window. Officers dispatched to that location were advised of the prior domestic-violence complaint, that warrants for Sharpe's arrest had been sought, and that Sharpe might have a firearm.

{¶ 6} In addition to uniformed patrol officers, units of the Springfield Police Division Special Operations team were dispatched to 861 Bellevue Avenue. Sergeant Gerald Woodruff of the Springfield Police Division, in his testimony at the hearing on Sharpe's motion to suppress evidence, confirmed that "a series [sic] squad units then surrounded the residence."

{¶ 7} Police remained outside Sharpe's residence during the following two to three hours, attempting to get Sharpe to come out. Sergeant Woodruff testified that police "did not go up to the door due to the fact of the information we received that [Sharpe] possibly had a weapon." Sergeant Woodruff also testified that several members of Sharpe's family had gathered outside the residence. During the time police were there, no one else went in or came out.

{¶ 8} Another witness who testified, John Sharpe, defendant's uncle, confirmed that he was outside defendant's residence, along with Stephanie McConnaghey, the victim of Sharpe's alleged domestic-violence offense and her cousin, known as "Mouse."

{¶ 9} Eventually, John Sharpe was able to speak with Sharpe by telephone and convince him to surrender to police. Sharpe then came out of the residence through the front door. He was taken into custody and searched. No gun was found on his person.

{¶ 10} Sergeant Woodruff testified that police then entered Sharpe's residence to perform a "sweep search." When he was asked why the search was performed, Sergeant Woodruff explained that it was done to "check for the safety and welfare of any other individuals that may have been involved or been inside the house, due to the circumstances that had occurred prior to taking Sharpe into custody leading to the possible possession of a weapon, the threat of harm to himself, and the violence of the incident that occurred earlier against his girlfriend.

{¶ 11} "We did not know at any time if anybody else was in that residence; and for the security and safety of anybody else, the sweep was conducted of that residence just for any other individuals."

{¶ 12} In his further testimony, Sergeant Woodruff stated that police had no information indicating that Sharpe was alone in the house, but neither did they have any specific information that anyone else was there. He explained that "we

didn't know," and conceded that officers just wanted to make sure that no one else was inside.

{¶ 13} Sergeant Woodruff did not testify, specifically, concerning what officers found in 861 Bellevue Avenue when they went inside. However, in his affidavit for a search warrant, which is attached to the state's brief on appeal, Sergeant Woodruff averred:

{¶ 14} "Officers from the Special Operations Team entered the residence to secure the location of any other possible subjects and check for the welfare of subject inside due to the incidents that led up to the arrest of Jeff Sharpe. As Officers entered the residence a strong odor of fresh marijuana was present inside the dwelling listed in the warrant especially in the rear bedroom. Sergeant Turner would observe approximately 2 ½ pounds of marijuana inside three plastic Ziploc baggies on the opened closed shelf. The items were discovered in plain view. A total of $291.00 of U.S. currency was also taken from Jeff Sharpe's person at the time of his arrest. Jeff Sharpe refused to give Officers consent to search the property."

{¶ 15} Officers emerged from the residence after the sweep search and reported that they had found drugs inside. Sergeant Woodruff asked Sharpe for his consent to search the residence, but Sharpe refused to consent. In its written decision denying Sharpe's motion to suppress evidence, the trial court found:

{¶ 16} "Immediately after the protective sweep, the police obtained a search warrant and executed the same. In addition to seizing the aforementioned marijuana, officers seized over 100 grams of powder cocaine and a loaded .45 caliber handgun."

{¶ 17} The evidence police seized in the search they performed pursuant to the warrant is the basis of the charges against Sharpe. He was charged by indictment with two counts of drug abuse, R.C. 2925.11(A), in connection with the cocaine and marijuana found in his residence; having weapons under a disability, R.C. 2923.13(A)(2), on the basis of a prior felony conviction; and receiving stolen property, R.C. 2913.51(A), the property being the gun found in his residence. Sharpe entered not-guilty pleas.

{¶ 18} Sharpe filed a motion to suppress evidence and two amended motions to suppress. In his second amended motion, Sharpe challenged the prior, warrantless protective sweep of his home by police. At the hearing on the motion to suppress, Sharpe clarified his objection, contending that the illegality of the protective sweep tainted the facts set out in the affidavit concerning drugs officers found in his house, on which the warrant to search the house for drugs was issued, requiring suppression of the evidence police seized when they

executed the warrant and searched his home. The parties and the court proceeded on that basis.

{¶ 19} After hearing the evidence offered, the trial court denied Sharpe's motion to suppress. The court found that the warrantless protective sweep that police performed was authorized under the rule of *Maryland v. Buie* (1990), 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276. The court further found, alternatively, that the inevitable-discovery exception to the warrant requirement would apply because, after Sharpe had "exited the residence unarmed and surrendered," "police had probable cause to secure a warrant for the search of the Bellevue residence in order to seize the firearm," and when executing a warrant would have discovered the drugs inside.

{¶ 20} Sharpe entered a negotiated plea of no contest to the drug-possession charge based on possession of cocaine, R.C. 2925.11(A), a second-degree felony. The state dismissed the remaining three charges in the indictment concerning the marijuana and the gun. Sharpe was convicted on his no-contest plea and sentenced to a term of three years' incarceration and financial sanctions. Sharpe filed a timely notice of appeal.

Assignment of Error

{¶ 21} "The trial court erred in failing to order the evidence suppressed because the search of the house violated the Fourth Amendment to the U.S. Constitution."

{¶ 22} On review of a trial court's denial of a Crim.R. 12(C)(3) motion to suppress evidence, we are bound by the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Dunlap* (1995), 73 Ohio St.3d 308, 652 N.E.2d 988. However, we must then conduct a de novo review of the trial court's application of the law to those facts. *State v. Anderson* (1995), 100 Ohio App.3d 688, 654 N.E.2d 1034. "Thus, whether the trial court met the applicable legal standard is a question of law answered without deference to the trial court's conclusion." *State v. Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, 771 N.E.2d 331, ¶ 9.

{¶ 23} The Fourth Amendment to the Constitution of the United States commands:

{¶ 24} "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

{¶ 25} The Fourth Amendment is made applicable to the states through the Fourteenth Amendment. *Wolf v. Colorado* (1949), 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782. For violations of the Fourth Amendment, courts are commanded to apply the exclusionary rule, suppressing use of any evidence that was illegally obtained. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

{¶ 26} Section 14, Article I of the Ohio Constitution is virtually identical in its terms to the Fourth Amendment. Suppression of evidence is authorized by Crim.R. 12(C)(3). Thus, the reach of Section 14, Article I of the Ohio Constitution is co-extensive with that of the Fourteenth Amendment. *State v. Robinette* (1997), 80 Ohio St.3d 234, 685 N.E.2d 762.

{¶ 27} The heart of the Fourth Amendment is its reasonableness test, and the mechanism the Fourth Amendment establishes to insure that the reasonableness test is satisfied is the companion requirement of a prior judicial warrant. Thus, "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable." *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576.

{¶ 28} Warrantless searches are not per se illegal, however, and will be upheld when, under the facts and circumstances of the particular case, it was reasonable for law enforcement officers to forgo securing a warrant prior to conducting a search or seizure. Reasonableness is demonstrated when the "societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate." *Arkansas v. Sanders* (1979), 442 U.S. 753, 759, 99 S.Ct. 2586, 61 L.Ed.2d 235.

{¶ 29} In order to justify an exception to the warrant requirement, the costs involved in obtaining a warrant must be sufficiently significant to justify avoiding the delay inherent in procuring a warrant. The normal inconvenience and slight delay involved in procuring a warrant, standing alone, "are not enough to bypass the constitutional requirement." *Johnson v. United States* (1948), 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436. And, because the warrant requirement functions to set limits on police discretion, warrantless searches are unconstitutional absent a recognized exception, "notwithstanding facts unquestionably showing probable cause" sufficient to obtain a warrant. *Agnello v. United States* (1925), 269 U.S. 20, 33, 46 S.Ct. 4, 70 L.Ed. 145.

{¶ 30} The evidence Sharpe asked the court to suppress was seized by police pursuant to a warrant to search his residence. Sharpe does not contest the process for issuance of the warrant or its execution. Rather, he asked the court to apply the "derivative evidence" rule, which requires suppression of

evidence that was seized in a seemingly lawful manner, but about which police learned because of a constitutional violation. *Nardone v. United States* (1939), 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307. Applying that rule, when information supporting probable cause for a search warrant was illegally obtained, the warrant is irreparably tainted, and any evidence obtained pursuant to the warrant must be suppressed. *State v. Carter* (1994), 69 Ohio St.3d 57, 630 N.E.2d 355.

{¶ 31} The trial court held that the prior, warrantless search of Sharpe's residence during which police discovered drugs, which was the basis for probable cause to obtain the warrant, was not illegal under the "protective sweep" exception to the warrant requirement announced in *Maryland v. Buie*. The state likewise relies on that exception on appeal.

{¶ 32} In *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276, two men, one of whom wore a red running suit, committed an armed robbery of a pizza restaurant. That same day, police obtained arrest warrants for two suspects, Jerome Buie and Lloyd Allen. Buie's house was placed under surveillance. Two days later, believing that Buie was inside his home, police entered to arrest him. In an attempt to find Buie, one of the officers first secured access to the basement and then twice shouted out into the basement, ordering anyone down there to come out. A male voice called back in reply. Eventually, a pair of hands was seen at the bottom of the stairwell, and Buie came up the stairs and was arrested. Thereafter, another officer entered the basement "in case someone else" was down there. When he did, the officer found a red running suit in plain view, connecting Buie to the armed robbery.

{¶ 33} Buie moved to suppress evidence of the red running suit police had seized. A Maryland court of appeals held that the trial court erred when it denied Buie's motion. On review, the Supreme Court reversed the state court, holding that the warrantless entry into Buie's basement was not unreasonable.

{¶ 34} The Supreme Court emphasized that per *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639, the warrant for his arrest authorized police to enter Buie's residence in order to find and arrest him, and to search the premises for him until he was found. However, that authority terminated when Buie was arrested. The court rejected Buie's argument that probable cause was required for police to then enter the basement as they did. Drawing an analogy to *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and *Michigan v. Long* (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201, which likewise rejected a probable-cause standard when there is a "need for law enforcement officers to protect themselves [against] violence in situations where they may lack probable cause for an arrest," *Terry*, 392 U.S. at 24, 88 S.Ct. 1868, 20 L.Ed.2d 889, the Supreme Court in *Buie* found a similar "interest of the

officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested, is not harboring other persons who are dangerous and who would unexpectedly launch an attack." 494 U.S. at 333, 110 S.Ct. 1093, 108 L.Ed.2d 276.

{¶ 35} The Supreme Court also pointed out in *Buie* that in contrast to the investigative detentions in *Terry* and *Long*, "[a] protective sweep * * * occurs as an adjunct to the serious step of taking a person into custody for the purpose of prosecuting him for a crime," id., being thus comparable to a search incident to an arrest. Further, "an in-home arrest puts the officer at the disadvantage of being on his adversary's 'turf.'" Id. Nevertheless, returning to the requirements for a search in *Terry* and *Long*, the Supreme Court wrote:

{¶ 36} "We agree with the State, as did the court below, that a warrant was not required. We also hold that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene. This is no more and no less than was required in *Terry* and *Long*, and as in those cases, we think this balance is the proper one." 494 U.S. at 334, 110 S.Ct. 1093, 108 L.Ed.2d 276.

{¶ 37} By adopting the "reasonable and articulable suspicion" standard of *Terry* and *Long*, the Supreme Court in *Buie* imposed a circumstantial predicate on the authority conferred on law enforcement officers to conduct a protective sweep of a defendant's residence following his arrest. There must be articulable facts from which police reasonably suspect that the premises in which the defendant is arrested harbors another person or persons who may launch an attack on the officers who are there. Absent that basis to act, a protective sweep is an unreasonable search for purposes of the Fourth Amendment, and any incriminating evidence it produces must be suppressed. *Buie*, 494 U.S. at 327, 110 S.Ct. 1093, 108 L.Ed.2d 276.

{¶ 38} We applied the rule of *Buie* in *State v. Lyons* (1992), 83 Ohio App.3d 525, 615 N.E.2d 310. In that case, a team of law enforcement officers went to the defendant's home to arrest him on a warrant. The charges for which Lyons was being arrested involved an alleged narcotics enterprise involving distribution of 285,000 pounds of marijuana. Lyons was one of 20 persons arrested in connection with those charges. At least one of the others remained at large and was believed to be in the area.

{¶ 39} Lyons's residence was in a rural area and situated well back from the road. Officers could not see inside through the windows, and there was very little cover between the house and the road. When officers knocked on the door, Lyons came to the door after four to five minutes. He appeared to have been asleep, or possibly under the influence of drugs. When asked whether anyone else was in the house, Lyons failed to respond. Lyons was then subdued and arrested. One of the officers performed a protective sweep of the house to determine that no one else who could harm officers was inside. Drugs and drug paraphernalia were found on the floor of an upstairs closet and were seized.

{¶ 40} Lyons was charged in connection with the evidence police seized. He moved to suppress the evidence. The motion was denied. In our review of Lyons's subsequent conviction, we affirmed the trial court. We found that the circumstances of Lyons's alleged offenses supported a reasonable suspicion that other persons in the drug-distribution ring might be in the house, a suspicion given added weight by observations officers made when they arrested Lyons that a party had taken place there the night before and that the couch appeared to have been slept on. Several firearms were also seen. Those facts, coupled with Lyons's failure to respond when asked whether anyone else was there, and the exposed position of the officers, presented a sufficient and articulable suspicion necessary for the protective sweep that officers performed. In so holding, we wrote:

{¶ 41} "As we understand the holding in *Maryland v. Buie*, the applicable test is whether the officers effecting the arrest have a reasonable belief, based upon articulable facts and rational inferences from those facts, that the area to be swept harbors an individual posing a danger to them. The scope of the protective sweep must not exceed that reasonably necessary to protect the safety of the officers." 83 Ohio App.3d at 534, 615 N.E.2d 310.

{¶ 42} In the present case, the trial court concluded that the protective sweep of defendant Sharpe's residence was valid, stating:

{¶ 43} "[D]ue primarily to the firearm, the Court finds persuasive evidence to support the protective sweep of the residence. When the defendant exited the residence unarmed and surrendered, the situation remained perilous. The firearm remained in the residence and it was unknown whether another subject had taken control over it. The police had a responsibility to the citizens of the neighborhood and community to immediately secure the situation. The protective sweep the police conducted was a strictly tailored mission to accomplish that compelling state interest. Absent the firearm, perhaps the protective sweep would not have been constitutionally sound."

{¶ 44} We do not agree. The protective-sweep exception established in *Buie* is grounded on the "interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." 494 U.S. at 333, 110 S.Ct. 1093, 108 L.Ed.2d 276. Once arrested, the subject poses no risk. The fact that a gun or other weapon is on the premises could give other persons an instrument to use in such an attack. But the gun or other weapon poses no danger to officers absent a person or persons who might use it to launch an attack.

{¶ 45} Like the defendants in *Buie* and *Lyons,* Sharpe was arrested at his home on an outstanding warrant. However, unlike those cases, no other perpetrators were implicated in the domestic-violence offense on which the warrant for Sharpe's arrest was issued. Further, when Sharpe was arrested, police had surrounded the residence for two to three hours, and during that time saw no one else go in or come out. And according to Sergeant Woodruff, police had no information indicating that anyone else was inside the house.

{¶ 46} The protective-sweep exception to the warrant requirement in *Buie* and *Lyons* requires some positive indication that another person or persons remain in the residential premises where a subject is arrested and that they pose a threat to the safety of officers or others. Lacking that indication, there is not a need to act sufficient to avoid the requirement of a prior warrant if the house is to be searched after a defendant's arrest there. Mere suspicion that a weapon remains inside is insufficient. Likewise, not knowing whether anyone else is there is an insufficient pretext because the need for protection necessarily implies that another person or persons are there. Faced with such doubts, and absent any reason to believe that other persons may be inside, officers must obtain a warrant before they conduct a search of a defendant's house after a defendant's arrest there.

{¶ 47} We find that on this record, the officers lacked a reasonable and articulable suspicion that following Sharpe's arrest, other persons who might pose a danger to the officers remained inside his house. Therefore, the trial court erred when it held that the protective-sweep exception announced in *Buie* permitted the warrantless "protective sweep" search of Sharpe's house police performed following his arrest.

{¶ 48} The state also relies on the "exigent circumstances" exception to the Fourth Amendment warrant requirement. The exigent or emergency circumstances exception justifies a warrantless entry in a variety of situations, including when entry into a building is necessary to protect or preserve life, to prevent physical harm to persons or property, or to prevent the concealment or destruction of evidence, or when someone inside poses a danger to the police

officer's safety. *Mincey v. Arizona* (1978), 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290; *United States v. McConney* (C.A.9, 1984), 728 F.2d 1195; *State v. Price* (1999), 134 Ohio App.3d 464, 731 N.E.2d 280; *State v. Applegate* (1994), 68 Ohio St.3d 348, 626 N.E.2d 942; *State v. Overholser* (July 25, 1997), Clark App. No. 96CA0073, 1997 WL 451473; *State v. Sladeck* (1998), 132 Ohio App.3d 86, 724 N.E.2d 488.

{¶ 49} The trial court did not rely on the exigent-circumstances exception when it denied Sharpe's motion to suppress, except to the extent that the purpose of a "protective sweep" is also within the scope of that exception. *Mincey*. The only finding the trial court made that could be related to the exigent-circumstances exception was the court's finding that because police suspected that a firearm remained in the residence after Sharpe was arrested, "it was unknown whether another subject had taken control of it. The police had a responsibility to the citizens and the neighborhood and community to immediately secure the situation. The protective sweep police conducted was a [sic] strictly tailored to accomplish that compelling state interest. Absent the firearm, perhaps the protective sweep would not have been constitutionally sound."

{¶ 50} Under facts and circumstances different from those in this case, when there is positive, specific evidence supporting a reasonable belief that a building contains an unsecured firearm that could pose a danger to the officers or other members of the public who are present inside that building or on the scene, exigent circumstances based upon public safety concerns may justify a warrantless entry to retrieve the weapon. *State v. Willis* (July 27, 1994), Montgomery App. No. 14276, 1994 WL 390178; *State v. Grier*, Summit App. No. 22136, 2005-Ohio-716, 2005 WL 418031. See also *New York v. Quarles* (1984), 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550. However, the mere fact that a firearm may be located within a private home is not, by itself, sufficient to create an exigent or emergency circumstance. *United States v. Keys* (C.A.6, 2005), 145 Fed.Appx. 528. What must be present is a risk of danger from its use. Id.

{¶ 51} The firearm posed no danger to anyone after Sharpe was arrested, except to the extent that another person might use it. However, police had no basis to believe, or even suspect, that anyone else was in the house. That they did not know whether anyone else was inside is insufficient to justify their entry. The concern that another person might be there was wholly speculative, and presented no emergency requiring police to enter the house without a warrant to find the gun.

{¶ 52} Neither did the bare fact that a gun was in the house constitute a criminal offense authorizing the action police took. The record does not suggest that the gun played any part in the domestic-violence offense Sharpe allegedly committed. Even if police suspected that the gun was somehow relevant to prove

Sharpe's criminal liability for that offense, they had the option of seeking a warrant to allow them to search the house and seize the gun. The inconvenience of securing the residence until a warrant could be obtained would not justify the action police took. *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235. There would be little delay in seeking a warrant; the court found that police "immediately" obtained a warrant after they found drugs in the house during their warrantless search. They could have acted as promptly to seek a warrant to enter in order to search for and seize the gun.

{¶ 53} In his testimony, Sergeant Woodruff offered a different justification related to the exigent-circumstances exception: to check for the safety and welfare of others "that may have been involved or been inside the house," which was a concern because of Sharpe's alleged domestic-violence offense, his possession of a gun, and his suicide threats.

{¶ 54} After Sharpe was arrested, his prior threat of suicide presented no basis to search for a gun he could have used for that purpose, but didn't. The only other person involved in the alleged domestic-violence offense, Stephanie McConnaghey, the alleged victim, had been safe outside the house with police during the previous two to three hours they were there. Police saw no one else go in or come out of the house during that time. The record does not reflect that any shots, calls for help, or other disturbances were heard from inside the house during those several hours. Sharpe's arrest when he emerged from the house was calm and uneventful. The state suggests that Sharpe's prior unorthodox method of entry, through a rear window, supports a suspicion that someone else was inside the house and possibly had been injured. That is speculative.

{¶ 55} We find that there were no exigent or emergency circumstances that justified the warrantless entry of Sharpe's home by police after he was arrested. Therefore, we reject the state's argument that the entry by police and their search of the house was justified by the exigent-circumstances exception to the warrant requirement.

{¶ 56} Though it held that the protective-sweep exception on which the state relied justified the officers' warrantless search of Sharpe's home, the trial court further stated:

{¶ 57} "Upon review of the facts and circumstances herein, the Court need not even address the constitutionality of the protective sweep. The police were provided with information that the defendant was armed with a handgun inside the Bellevue residence. That information could certainly be corroborated by the fact that the defendant was surely in a volatile state of mind given the earlier domestic violence incident. Pursuant to this information, officers summoned the assistance of the Special Operations Team to assist in the process of taking the

defendant into custody. After a two-hour standoff, the defendant exited the residence unarmed and surrendered.

{¶ 58} "At this point in time, prior to the protective sweep and thus without knowledge or evidence of drugs, the police had probable cause to secure a warrant for the search of the Bellevue residence in order to seize the firearm. Upon execution of that warrant, given the strong odor of marijuana, the police would have found the marijuana, powder cocaine, and the .45 caliber handgun. In other words, the discovery of the drugs was inevitable. Accordingly, irrespective of the constitutionality of the protective sweep, the drugs are admissible under the inevitable discovery rule."

{¶ 59} The inevitable-discovery doctrine holds that if there is a reasonable probability that illegally obtained evidence would have ultimately been discovered during a lawful investigation, notwithstanding the government's misconduct, then that evidence will not be suppressed. *Nix v. Williams* (1984), 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377; *State v. Perkins* (1985), 18 Ohio St.3d 193, 18 OBR 259, 480 N.E.2d 763. The state bears the burden of showing within a reasonable probability that police would have discovered the evidence apart from the unlawful conduct. Id. In doing so, the state must show that the police possessed the leads making the discovery inevitable at the time of the misconduct and that the police were actively pursuing an alternate line of investigation prior to the misconduct. *State v. Taylor* (2000), 138 Ohio App.3d 139, 740 N.E.2d 704.

{¶ 60} In a case cited by the trial court, *State v. Aber*, Licking App. No. 2003CA106, 2004-Ohio-4116, 2004 WL 1753383, officers acting on a reliable tip that the defendant was selling drugs out of his house went there to conduct a "knock and talk" investigation. After answering the door, the defendant denied that there were any drugs inside. The lead officer then told the defendant that he was going to leave to obtain a search warrant and directed the other officers to remain there. The defendant subsequently slammed the door, and the officers began kicking it. The defendant then admitted them, and the officers performed a protective sweep in which drugs were discovered. Coincident to that, the lead officer had obtained a judge's agreement to sign a search warrant, but no warrant had yet issued.

{¶ 61} On an appeal from the defendant's conviction following a denial of his motion to suppress evidence, the Fifth District Court of Appeals rejected the defendant's contention that probable cause necessary or a search warrant was lacking. The appellate court also held, at ¶ 18:

{¶ 62} "Appellant further argues the protective sweep was inappropriate because there were no exigent circumstances justifying the officers' entry into the residence. Even if we find the protective sweep of the residence was not constitutionally sound, such does not render the trial court's denial of appellant's

motion to suppress erroneous. Because a valid search [warrant] was being obtained, any evidence improperly seized during the protective sweep would have been discovered during the execution of the search warrant; therefore, [the evidence] is admissible under the inevitable discovery rule."

{¶ 63} The trial court's reliance on the holding in *Aber* is misplaced. A legitimate, alternative line of investigation that would inevitably have resulted in the same evidence being discovered is necessary in order to apply the inevitable discovery rule. *State v. Taylor.* In *Aber,* police were actively pursuing an alternative line of investigation: the request for a search warrant by the lead officer, when other officers at the defendant's residence entered to perform a protective sweep. In the present case, police were not actively pursuing any alternative line of investigation when they entered Sharpe's residence and discovered drugs. Neither did the fact that they had probable cause for a warrant, as the trial court found, permit officers to enter Sharpe's residence without a warrant. That officers then had probable cause is subject to dispute. However, in any event, an illegal search conducted without a warrant, even when probable cause exists, is still illegal. *Agnello v. United States,* 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145.

{¶ 64} The record does not suggest that officers conducted a protective sweep of Sharpe's residence as a pretext to search for drugs. Their desire to locate the gun they suspected Sharpe had brought with him was apparently sincere. Nevertheless, the reasonableness test of the Fourth Amendment isn't satisfied by sincerity, because such a standard would substitute discretion of law enforcement officers for the requirement of a prior judicial warrant.

{¶ 65} Our analysis necessarily and always returns to the fundamental requirement of the Fourth Amendment: unless it is reasonable for officers to forgo obtaining a warrant, a warrantless search and seizure is illegal. On this record, and after Sharpe was arrested outside his house, it was unreasonable for officers to enter his house without a warrant. The trial court's references to Sharpe's "volatile state of mind" and his "stand-off" with police, matters that had been resolved by his arrest, cannot function retroactively to instill a quantum of reasonableness into the subsequent entry into Sharpe's residence without obtaining a warrant. Because the entry was unreasonable, evidence seized pursuant to a search warrant based on probable cause obtained during the warrantless search must be suppressed pursuant to the derivative-evidence rule.

{¶ 66} The assignment of error is sustained. Sharpe's conviction and sentence are reversed, and the matter is remanded for further proceedings on the charges in the indictment.

Judgment accordingly.

BROGAN and FAIN, JJ., concur.