{¶ 31} I agree with the majority's judgment affirming the conviction because the entry was made based on probable cause and exigent circumstances. I write separately to emphasize the facts I believe justified this warrantless intrusion into a private home.
 {¶ 32} The police officers approached the duplex to investigate a call from a neighbor regarding a car theft by an armed man at that address. The record does not provide indicia of reliability to support the neighbor's allegation, including so much as the man's last name or any details about how he came to believe that the man with the gun had stolen a car. Thus, the record *Page 13 
does not support the notion that police had probable cause to believe that anyone in that apartment had stolen a car.
 {¶ 33} The officers did, however, have probable cause to believe it was a drug house and that people inside may be armed. This was based on a history of arrests of people with drugs claiming to have bought them at that apartment and, significantly, the statement taken from the man who was arrested just hours earlier. Officers testified that he told them that, earlier that day, he had bought crack at that address from a man with a handgun. Therefore, it was reasonable for the officers to be especially cautious approaching the duplex to investigate the subsequent report of an alleged car thief with a gun. Potential possession of a gun is not necessarily evidence of a crime, nor does it, without more, create an exigency sufficient to avoid the warrant requirement.State v. Sharpe, 174 Ohio App. 3d 498, 2008-Ohio-267, at ¶ 50. "What must be present is a risk of danger from its use." Id.
 {¶ 34} Before the door was opened from within, the officers were not authorized to enter the apartment, but they had reason to investigate the allegation of car theft. They did not violate any constitutional rights by approaching the duplex in hopes of having a voluntary conversation with the occupants. "The Fourth Amendment[, however,] confers the constitutional right to refuse to consent to warrantless entry." State v. Cummings, 9th Dist. No. 20609, 2002 WL 57979 at *3 (Jan. 16, 2002) (citing Camara v. Municipal Court, 387 U.S. 523, 530-540
(1967)). Thus, the officers legally approached the door, but without a warrant, they had no authority to enter the apartment without consent.
 {¶ 35} As the officers approached, they gathered additional details reinforcing their belief that it was a drug house. The windows were completely blocked out and there was an "eyeball" surveillance camera at the door. The people inside, however, would have had no *Page 14 
motivation to destroy drugs or create any additional danger for officers until the police made their presence known. As the officers approached, there was no indication that evidence was in the process of being destroyed, a crime was being committed, or that anyone was in any immediate danger.
 {¶ 36} The officers never had a chance to ask for consent to enter the apartment. Before they knocked on the door or announced who they were, the interior apartment door was abruptly flung open "in a confrontational manner" by a young woman cussing a blue streak at whomever had messed with the surveillance camera. In that moment, the officers saw two males inside the apartment who, although apparently in the process of approaching the door, quickly turned and fled in different directions when they saw the police. One of the men was wearing an orange jacket as the neighbor had described. Police testified that, when they saw the men run, they believed they then posed an imminent threat to the officers. Based on the facts known to the officers at that time, including at least two separate tips from the previous several hours that men in that apartment were armed, it was reasonable for them to believe that there was an urgent need to protect themselves from attack. Therefore, based on the exigency created by the occupants' actions, I would hold that the officers were justified in securing the occupants of the apartment and waiting for a search warrant to arrive. *Page 1