[Cite as *State v. Clark*, 2012-Ohio-2058.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96768**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CLAUDIUS CLARK

DEFENDANT-APPELLANT

## JUDGMENT:
## REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-535510

**BEFORE:** Keough, J., Jones, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 10, 2012

**ATTORNEY FOR APPELLANT**

Myron P. Watson
420 Lakeside Place
323 West Lakeside Avenue
Cleveland, OH 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Lauren Bell
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

**{¶Error! Bookmark not defined.}** Defendant-appellant, Claudius Clark, appeals from the trial court's judgment, rendered after a jury trial, finding him guilty of drug trafficking, drug possession, and possession of criminal tools, and sentencing him to four years incarceration. For the reasons that follow, we reverse and remand.

## I. Procedural History

**{¶Error! Bookmark not defined.}** In April 2010, Clark was indicted for drug trafficking in violation of R.C. 2925.03(A)(2) with a firearm specification, drug possession in violation of R.C. 2925.11(A) with a firearm specification, and possessing criminal tools in violation of R.C. 2923.24(A). Clark filed a motion to suppress; the trial court held a hearing over two days and then denied the motion, finding that Clark had consented to the police officers' entry into and search of his apartment.

**{¶Error! Bookmark not defined.}** Prior to the start of trial, the state filed a motion to amend the indictment to reflect that the weight of the drugs was less than that contained in the original indictment. The amendment did not change the felony level of the charges in the indictment and the trial court granted the motion.

**{¶Error! Bookmark not defined.}** The jury returned a verdict of guilty on all charges of the indictment and the trial court sentenced Clark to an aggregate term of four years incarceration. Clark appeals and raises four assignments of error for our review.

## II. Motion to Suppress

**{¶Error! Bookmark not defined.}** In his first assignment of error, Clark contends that the trial court erred in denying his motion to suppress because he did not consent to the police officers' entry into or search of his apartment.

**{¶Error! Bookmark not defined.}** The testimony at the suppression hearing indicated the following. In January 2010, the city of Euclid police department received a complaint of a male selling drugs at the Waters Edge Apartments. In March 2010, the police received several anonymous tips that Clark was selling drugs in the parking lot of the apartments and from his own apartment. According to Euclid police detective Benjamin Kreischer, the police conducted surveillance of the apartment building but did not observe any criminal activity. Accordingly, on March 18, 2010, the police decided to conduct a "knock and talk" with Clark.

**{¶Error! Bookmark not defined.}** Kreischer testified that the purpose of a "knock and talk" is to engage a suspect in a conversation to determine whether the allegations about the individual have any merit; he denied that the primary goal of a "knock and talk" is to gain entrance to find contraband. But Detective David Carpenter, who also participated in the "knock and talk," testified that the purpose of a "knock and talk" is "to

develop probable cause and make an arrest" and that the Euclid police conduct "knock and talks" when they do not have probable cause for a search warrant.

{¶Error! Bookmark not defined.} At approximately 8:00 p.m. on March 18, Kreischer, Carpenter, and two other Euclid police officers knocked on the door to Clark's apartment. Carpenter testified that all of the officers were in plain clothes and wearing a vest marked "Police." Two uniformed security officers from the apartment complex accompanied them.

{¶Error! Bookmark not defined.} According to Kreischer, the police could smell burnt marijuana emanating from Clark's apartment as they stood in the hall. When Clark answered the door, the police identified themselves as narcotics and vice officers with the Euclid police department and asked Clark if they could come in to discuss the complaints about him. Both Kreischer and Carpenter testified that Clark invited them into his apartment.

{¶Error! Bookmark not defined.} Carpenter testified that the officers stood just inside the doorway and asked Clark about the burnt-marijuana smell. According to Kreischer, Clark stated that he smoked marijuana every day and told the police "you may as well take me now."[1] Detective Carpenter testified that there was also an overwhelming smell of raw marijuana in the apartment and he asked Clark about the smell. According to Carpenter, Clark again said that he smoked marijuana every day and

---

[1]Under section 513.03 of the Euclid Codified Ordinances, possession of any amount of marijuana is a first-degree misdemeanor and an arrestable offense.

"begged" the officers to arrest him in what Carpenter testified was an apparent attempt to get the police out of his apartment.

{¶Error! Bookmark not defined.} Both Kreischer and Carpenter testified that Clark asked to get his shoes from his bedroom, so they followed him to make sure he did not procure a weapon and that there was no one else in the apartment.  Kreischer testified that he asked Clark what was on the nightstand and Clark told him it was marijuana; Carpenter testified that he observed two loose marijuana buds and two smoked marijuana cigarettes wrapped in paper.  When Carpenter saw a large, locked, Craftsman toolbox on the floor by the bed, he asked Clark what was in the toolbox.  Clark responded, "What the f— do you think is in it?"  Kreischer checked the closet and found a shotgun and a tray that contained a digital scale, plastic baggies, rubber bands, and marijuana residue.

{¶Error! Bookmark not defined.} Clark was arrested and transported to the police department.  Several officers stayed at the apartment while the police obtained a search warrant, which they executed later that evening.  The next day, the police obtained a warrant to open the toolbox, in which they found ten pounds of marijuana packaged in plastic bags.

{¶Error! Bookmark not defined.} Clark's version of events differed from that of Kreischer and Carpenter.  He denied inviting the police into his apartment and testified that when he opened the door, the officers told him he was under arrest for selling drugs and immediately surged into the doorjamb, making it impossible for him to close the door.  He also testified that Det. Carpenter had his gun drawn.

**{¶Error! Bookmark not defined.}** Clark testified that he repeatedly told the police they could not come into the apartment without a warrant but they told him they were coming in anyway because they knew there was a lot of marijuana in the apartment. Clark said that he then told the police to wait by the door because he wanted to put some clothes on, and he walked back to his bedroom. He said that Carpenter followed him, went to his nightstand, picked up the papers on the nightstand, opened them, and found marijuana.

**{¶Error! Bookmark not defined.}** Clark testified that at the police station after his arrest, the police gave him a two-part form to sign. He signed the first part, which stated that the police had given him his *Miranda* rights when he was arrested, but refused to sign the second part, which stated that he had consented to the search of his apartment.

**{¶Error! Bookmark not defined.}** A motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. * * * Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Id.*

**{¶Error! Bookmark not defined.}** The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. *See, e.g., United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151

L.Ed.2d 740 (2002); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988).

{¶Error! Bookmark not defined.} A search that is undertaken following valid consent is constitutionally permissible. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). A warrantless search based upon a suspect's consent is valid if the consent was voluntarily given, and not the result of duress or coercion, either express or implied. *Id.* The state must show by "clear and convincing" evidence that the consent was freely and voluntarily given. *Id.* This is an intermediate standard of proof—more than a preponderance of the evidence but less than beyond a reasonable doubt. *State v. Ingram*, 82 Ohio App.3d 341, 346, 612 N.E.2d 454 (2d Dist.1992), citing *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶Error! Bookmark not defined.} Voluntariness of consent is determined by examining the totality of the circumstances involved. *Schneckloth* at 227. Consent may not be coerced by explicit or implicit means, or by implied threat or covert force, and it is not established where the individual merely submits to a claim of lawful authority. *Id.*

{¶Error! Bookmark not defined.} Factors for a court to consider in determining whether consent is voluntary include: (1) the suspect's custodial status and the length of

the initial detention; (2) whether the consent was given in public or at a police station; (3) the presence of threats, promises, or coercive police procedures; (4) the words and conduct of the suspect; (5) the extent and level of the suspect's cooperation with the police; (6) the suspect's awareness of his right to refuse to consent and his status as a "newcomer to the law"; (7) the suspect's education and intelligence; and (8) the suspect's belief that no incriminating evidence will be found. *Schneckloth* at 248-249; *State v. Webb*, 2d Dist. No. 17676, 2000 WL 84658 (Jan. 28, 2000).

{¶Error! Bookmark not defined.} While accepting the trial court's findings of fact as true, we find that upon considering these factors, the totality of the circumstances in this case demonstrates that Clark did not voluntarily consent to the officers' entry into and search of his apartment.[2]  The record reflects that four police officers and two uniformed security officers were waiting for Clark when he opened his apartment door.  Even discounting Clark's testimony that one of the officers had his gun drawn, we find the presence of six officers immediately outside Clark's apartment door to be an overwhelming show of force that was inherently coercive, especially if, as Det. Kreischer testified, the purpose of a "knock and talk" is simply to "engage a suspect in conversation."

---

[2]On a motion to suppress, accepting the trial court's findings of fact as true, the appellate court must independently determine whether the facts satisfy the applicable legal standard.  *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.

**{¶Error! Bookmark not defined.}** The record also reflects that when Clark opened the door, the officers immediately surged forward into the doorjamb, making it impossible for Clark to shut the door.   This tactic could only be meant to intimidate Clark into letting the police into his apartment so they could observe any contraband, consistent with Det. Carpenter's testimony that the real purpose of a "knock and talk" is to develop probable cause and make an arrest.

**{¶Error! Bookmark not defined.}** Moreover, both detectives testified that there was an "immediate" and "overpowering" smell of raw marijuana in the apartment as they stood in the doorway talking to Clark.   Clark was obviously aware of this smell and would have had every reason to believe the police would find this incriminating evidence if they came into his apartment.   To conclude that he would have voluntarily invited the police in to his apartment under such circumstances is highly suspect.   In fact, Clark testified that after his arrest, he refused to sign the form indicating that he had consented to the search of his apartment.

**{¶Error! Bookmark not defined.}** Based on the foregoing, we can only conclude that under the totality of the circumstances, any consent was the result of coercive police tactics, and not voluntarily given.   "'Consent' that is the product of official intimidation or harassment is not consent at all.   Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to refuse." *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Therefore, any evidence obtained as a result of the warrantless entry into and search of

Clark's apartment should have been suppressed as tainted fruit of the poisonous tree and, accordingly, the trial court erred in denying the motion to suppress. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

{¶Error! Bookmark not defined.} Appellant's first assignment of error is sustained; the matter is remanded for further proceedings consistent with this opinion.

{¶Error! Bookmark not defined.} In light of our resolution of the first assignment of error, the second, third, and fourth assignments of error are overruled as moot. App.R. 12(A)(1)(c).

{¶Error! Bookmark not defined.} Reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

LARRY A. JONES, SR., P.J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS WITH SEPARATE OPINION.

SEAN C. GALLAGHER, J., CONCURRING:

**{¶Error! Bookmark not defined.}** I concur with the majority and write separately to address my growing concerns with the use of the "knock and talk" procedure and its impact on the Fourth Amendment of the U.S. Constitution. In Ohio, review of the state's specific use of the "knock and talk" procedure has been limited, if not non-existent. *State v. Kinsell*, 9th Dist. No. 25074, 2010-Ohio-3854 (noting that the use of the "knock and talk" procedure initiates a consensual encounter); *see also State v. Bowling*, 8th Dist. No. 93052, 2010-Ohio-3595 (Dyke, J., concurring); *State v. Barron*, 10th Dist. No. 09AP-458, 2009-Ohio-5785; *State v. White*, 9th Dist. Nos. 23955 and 23959, 2008-Ohio-2432; *State v. White*, 175 Ohio App.3d 302, 2008-Ohio-657, 886 N.E.2d 904 (9th Dist.); *State v. Sharpe*, 174 Ohio App.3d 498, 2008-Ohio-267, 882 N.E.2d 960 (2d Dist.); *State v. Golubov*, 9th Dist. No. 05CA0019, 2005-Ohio-4938; *State v. Aber*, 5th Dist. No. 2003CA106, 2004-Ohio-4116; *State v. Norman*, 10th Dist. No. 03AP-298, 2003-Ohio-7038; *In re Lallo*, 5th Dist. No. 1997CA00426, 1998 WL 525561 (Aug. 17, 1998); *State v. Jenkins*, 104 Ohio App.3d 265, 661 N.E.2d 806 (1st Dist. 1995).

**{¶Error! Bookmark not defined.}** In reviewing any warrantless search or seizure, courts must begin "with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576

(1967). The use of the "knock and talk" procedure initiates a potentially consensual encounter where the resident is free to deny the police access to the residence. *State v. Bowling*, 8th Dist. No. 93052, 2010-Ohio-3595, ¶ 68 (Dyke, J., concurring). Generally, consensual encounters do not implicate the Fourth Amendment. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). However, once the encounter loses its consensual nature, courts must review the actions under the imprint of the Fourth Amendment. *Id.*

{¶Error! Bookmark not defined.} The "knock and talk," therefore, does nothing more than open the door to the residence, and any search and seizure that follows must rest on a firmly established exception to the Fourth Amendment, whether, for example, the inevitable search is based on exigent circumstances, voluntary, implied or direct consent, or the need for a protective sweep. Nevertheless, the use of a "knock and talk" policy where police are unable to secure probable cause by other means, is a slippery slope that invariably erodes the protections of the Fourth Amendment.

{¶Error! Bookmark not defined.} In this case, prudence seems to dictate that the officers should have secured a warrant for the apartment upon smelling the odor of raw marijuana emanating from inside. If police were concerned that Clark would flee back inside and attempt to destroy the evidence of freshly smoked marijuana, they could have briefly detained Clark on the scene while they waited for the warrant. There was no evidence in this record that anyone other than Clark was present at the time the police initiated the "knock and talk." In the event police heard noises, or suspected others

inside were destroying evidence, they would have had the exigent circumstances justifying entry. I recognize it is not easy for police officers engaged in a drug investigation to drop everything and secure a warrant; nevertheless, inconvenience cannot serve as a basis for diminishing constitutional protections.