[Cite as *State v. Roberson*, 2012-Ohio-1237.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2010-CA-66 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2009-CR-834 |
| v. | : | |
| | : | |
| CORDERO D. ROBERSON | : | (Criminal Appeal from |
| | : | (Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**DECISION AND ENTRY**

Rendered on the _____23rd_____ day of March, 2012

. . . . . . . . . . .

PER CURIAM:

{¶ 1}   This appeal has been submitted on a brief filed by assigned counsel under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, (1967) counsel not having found any potential assignments of error having arguable merit.   We conclude that there is one potential assignment of error – that the trial court erred in overruling defendant-appellant Cordero Roberson's motion to suppress – that is not so lacking in arguable merit as to be wholly frivolous.   Accordingly, the *Anders* brief filed on Roberson's behalf is rejected, and new appellate counsel will be assigned.

## I.  The Suppression Hearing

{¶ 2}  Fairborn police officers Shane Hartwell and Joseph Pence were dispatched to 1800 Ironwood Drive, in Fairborn, on a report of domestic violence by a man against a woman.  The report was that the man had threatened the woman with a firearm.

{¶ 3}  Hartwell and Pence arrived at about the same time.  By prior arrangement, the alleged victim met them outside the residence.  The victim, identified at the hearing only as Ms. Austin, confirmed that a gun had been involved.  She told the officers that Roberson, who was staying with her at the time, was in the shower in the bathroom.  She said that the gun was either on his person, in the bathroom, or in one of two bags in the living room that belonged to Roberson.  She identified herself as a tenant of the apartment, and gave the officers permission to enter and contact Roberson.  For her safety, she remained outside the apartment.

{¶ 4}  The officers entered the apartment after failing to get a response from outside the door.  Both officers entered with their guns drawn.  "Upon going inside the apartment, we stood inside the front living room and multiple announcements were made for Mr. Roberson to come out and speak with us."  Hartwell knocked on the bathroom door.  The officers could hear loud music coming from the bathroom, and the sound of the shower running.  Roberson did not emerge from the bathroom at this time.

{¶ 5}  The officers determined that no one was in the living room or in an attached kitchen.    They did not look in the bedroom.

{¶ 6}  The officers decided to check the bags, one of which was a book bag, and one of which was a suitcase.  The suitcase was open, but a flap was covering the contents.  Hartwell found a Colt .380 semiautomatic firearm wrapped inside a pair of men's underwear,

underneath the suitcase flap. Hartwell rendered the gun safe, making sure that it was not loaded.

**{¶ 7}** Pence then knocked on the door to the bathroom, yelling for Roberson, who finally emerged from the bathroom. Pence handcuffed Roberson and talked to him in the kitchen, while Hartwell contacted dispatch to run the serial number on the gun. Hartwell was told that the gun had been reported stolen. At about this time, Pence gave Roberson oral warnings under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**{¶ 8}** Hartwell explained his decision to search the bags for a weapon:

Q. Okay. When you searched that bag – why did you search the bag looking for the gun?

A. Because we wanted to make sure that he didn't have it on him and was in the bathroom arming himself while we're making our announcements.

Q. Okay. So if you had searched the bag and not found the gun, what would have been your assumption?

A. That he would have had the gun.

* * *

Q. The question was this, Officer Hartwell, if you had not found the gun that the victim reported that the Defendant had pulled on her in that bag, what would your fear have been? Let me put it that way.

A. That he would have had the gun on him and we would approach in a totally different way.

**{¶ 9}** Pence explained the decision this way:

Q. Why didn't you just barge into the bathroom without looking in the suitcase? Why didn't you just go on in there?

A. If he had a weapon, going into a small bathroom like that would have been – it would have been unsafe. It could have ended with us being shot.

{¶ 10} On cross-examination, Hartwell was questioned about the need to search the suitcase, considering that it was in the living room with them:

Q. Okay. So when you entered the apartment Miss Austin was outside and you had your guns drawn, correct?

A. Correct.

Q. And you secured the living room, the kitchen, and all the area that you could see, correct?

A. Correct.

Q. And the bag was sitting on the floor, correct?

A. Yes.

Q. And the bag – there was no one that could get to the bag besides yourself and Officer Pence, correct?

A. Correct.

Q. So the bag was secure. No one could get to the bag besides yourself and Officer Pence?

A. Well, I mean, someone could have got to it if they wanted to.

Q. But they would have to get through you or Officer Pence to get to that bag, correct?

A.   No.   Once we had seen off to the kitchen, we were staying back basically between the front door and the bags making our announcements for Mr. Roberson to come out of the bathroom.

Q.   Okay.   Either yourself or Officer Pence could have secured that bag, stood beside it to make sure that no one opened that bag, is that correct?

A.   I mean, there's a potential that someone could have come out and fought their way to it, yes.

Q.   But you could have secured that bag.   Is it possible for you to have secured that bag?

A.   Looking back, we could have maybe pulled [it] out into the hallway.

{¶ 11}   Pence was also cross-examined on the same subject:

Q.   And, in this case, Miss Austin was outside, correct?

A.   Correct.

Q.   And you had secured the living room, correct?

A.   Correct.

Q.   And you had your guns drawn so you yourself, were as secure as you could be, correct?

A.   Correct.

Q.   And instead of – and you were standing by the suitcase, correct?

A.   Correct.

Q.   So no one could come and open that suitcase?   No one could get into the contents of that suitcase without going through yourself or Officer Hartwell, correct?

A.   That is correct.

{¶ 12} When questioned at the scene, Roberson initially denied that there had been any kind or argument or dispute between himself and Austin.  Later, he admitted that there had been an argument, but denied having made threats or having pulled a gun on Austin.  He said "he knew nothing of any type of weapon nor did he own one."

{¶ 13} Roberson was taken into custody and transported to the Fairborn Police Department.  While there, Pence administered written *Miranda* warnings.  Roberson said that he had purchased the gun from a friend, and it was his.

{¶ 14} Roberson was charged by indictment with Receiving Stolen Property, in violation of R.C. 2913.51(A), a felony of the Fourth Degree.

{¶ 15} After his motion to suppress was overruled, Roberson pled no contest, was found guilty, and was sentenced to community control sanctions for a period of time not exceeding five years.   He is appealing from his conviction and sentence.

## II.   The Suppression Issue Is Not Wholly Frivolous

{¶ 16} The procedure that must be followed when assigned appellate counsel concludes that there are no assignments of error to present to the court is set forth in *Anders v. California*, supra, at 386 U.S. 738, 744, 87 S.Ct. 1396, 181 L.Ed.2d 493:

> The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae.  The no-merit letter and the procedure it triggers do not reach that dignity.  Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court.  His role as advocate requires that he support his client's appeal to the best of his ability.  Of course, if counsel finds his case to be wholly frivolous, after a

conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; *the court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.* If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal. [Footnote omitted; emphasis added.]

{¶ 17} In short, in order to accept a brief filed under the authority of *Anders v.California* and affirm, we must find that the appeal is wholly frivolous, in the sense that there are no issues that the appellant can raise that have arguable merit.

{¶ 18} At the conclusion of the suppression hearing, the State declared that it was submitting the issue to the trial court. The trial court indicated that it would like some argument, but it is not clear whether the trial court was referring to the State, both counsel, or just to defense counsel, who responded.

{¶ 19} Roberson acknowledged that the officers had Austin's consent to enter the premises. Roberson argued that with Austin waiting outside, and with two officers inside the living room with guns drawn, they could wait for Roberson to emerge from the bathroom, and lacked exigent circumstances to search the suitcase without a warrant.

{¶ 20} The State responded as follows:

* * * . I think it's a narrow issue, Your Honor. I think the Defense admits

that the Officers entered the residence properly with permission. The issue is whether or not once the Officers were there and standing outside the door of the bathroom and had the bags secured that eliminated any exigent circumstances, and, thus, the Officers should have waited for the Defendant to come out of the bathroom and then gone and got a search warrant or whatever, which I understand that's the Defendant's position.

The State's position is that that's asking, in any situation, Officers to put their self [sic] at an unnecessary risk at the time, when they'd just been given information that this individual had taken a gun and specifically had threatened to kill.[1] That's obviously the information received.

{¶ 21} In considering whether a claim that the trial court should have suppressed the evidence has any arguable merit, the following exchange is of interest:

THE COURT: That raises an interesting question. Reasonable suspicion to believe a person is armed, certainly under the Terry exception requires – allows a frisk as opposed to a full blown search. Should the Officers had [sic] frisked the bags opposed to searching the bags under that exception?

MR. HUNTER [representing the State]: You know something, I'm not sure, Your Honor. I'm not going to act like I know. I would have to research that. I don't know the answer. The State's position is this, it's the Court's call. * * * .

{¶ 22} The trial court gave the State a week to submit any case law to support its position. The State did not do so, but Roberson did submit authorities. In a written decision, the trial court overruled Roberson's motion to suppress. The trial court cited

---

[1] We have found no evidence in the record that Roberson threatened to kill Austin.

authorities in its decision.

{¶ 23} We have reviewed all of the authorities cited in both the trial court's decision and in Roberson's submission of authorities to the trial court. We conclude that the issue of whether the police officers could properly look inside Roberson's suitcase under the circumstances presented by the evidence in the record is not wholly frivolous. We emphasize that in reaching this conclusion, we are not deciding the issue on its merits, merely that it is not wholly frivolous for *Anders* purposes.

{¶ 24} The *Anders* brief filed on Roberson's behalf is rejected. New appellate counsel will be assigned. New counsel shall file a brief asserting an assignment of error based on the issue identified in this decision and entry, along with any other assignments of error that counsel, in his or her professional judgment, should deem worthy of asserting.

{¶ 25} IT IS SO ORDERED.


_____

THOMAS J. GRADY, Presiding Judge


_____

MIKE FAIN, Judge


_____

MICHAEL T. HALL, Judge

Copies mailed to:

Elizabeth A. Ellis
Greene County Prosecutor's Office
61 Greene Street
Xenia, OH 45385

Scott Bissell
P.O. Box 92
Bellbrook, OH 45305

Hon. Stephen Wolaver
Greene County Common Pleas Court
45 N. Detroit Street
Xenia, OH 45385-2998

Cordero D. Roberson
1961 N. 15th Avenue
Milwaukee, WI 53205


:df