[Cite as *State v. Roberson*, 2012-Ohio-5106.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2010-CA-66 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2009-CR-834 |
| v. | : | |
| | : | |
| CORDERO D. ROBERSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of November, 2012.

. . . . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. #0009172, by STEPHANIE R. HAYDEN, Atty. Reg. #0082881, Greene County Prosecutor's Office, 55 Greene Street, First Floor, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

BRADLEY S. BALDWIN, Atty. Reg. #0071086, Baldwin, Valley & Wallace, LLC, 854 East Franklin Street, Dayton, Ohio 45459
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant Cordero Roberson appeals from his conviction for

Receiving Stolen Property and the imposition of community control sanctions. Roberson contends that the trial court erred in overruling his motion to suppress evidence of a firearm that was obtained by police during a warrantless search of his suitcase in the living room of an apartment while he was showering in the bathroom.

{¶ 2} We conclude that the trial court erred in finding that exigent circumstances existed that permitted the officers to conduct a warrantless search of Roberson's suitcase when the officers had the apartment and suitcase secured, the alleged victim was safely outside the apartment, and Roberson was in the bathroom shower. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.

## I.  Officers Search Roberson's Suitcase After They Secured The Apartment

{¶ 3} Fairborn police officers Shane Hartwell and Joseph Pence were dispatched to 1800 Ironwood Drive, in Fairborn, on a report of domestic violence by a man against a woman. The report was that the man had threatened the woman with a firearm.

{¶ 4} Officers Hartwell and Pence arrived at about the same time. The alleged victim met the officers outside the residence. She confirmed that a gun had been involved and told the officers that Roberson, who was staying with her at the time, was in the shower in the bathroom of her apartment. The victim explained that the gun was either with Roberson in the bathroom or in one of two bags in the living room that belonged to Roberson. The victim gave the officers permission to enter her apartment and contact Roberson. For her safety, she remained outside the apartment.

{¶ 5} The officers knocked on the door of the apartment, but received no response

from Roberson. The officers then entered the apartment with their guns drawn. The officers stood inside the front living room and made multiple announcements for Roberson to come out and speak with them. The officers could hear loud music coming from the bathroom, and the sound of the shower running. Roberson did not emerge from the bathroom at this time or respond to the officers' announcements.

{¶ 6}  The officers determined that no one was in the living room or in an attached kitchen. They did not look in the bedroom, which would have required them to walk by the bathroom door. The officers decided to check the bags in the living room, one of which was a book bag, and one of which was a suitcase. The suitcase was open, but a flap was covering the contents. While Officer Pence was watching the bathroom door with his gun drawn, Officer Hartwell searched Roberson's suitcase and found a Colt .380 semiautomatic firearm wrapped inside a pair of men's underwear, underneath the suitcase flap. Officer Hartwell rendered the gun safe, making sure that it was not loaded.

{¶ 7}  Officer Pence then knocked on the door to the bathroom, yelling for Roberson, who finally emerged from the bathroom with his hands in the air. Officer Pence handcuffed Roberson and talked to him in the kitchen, while Officer Hartwell contacted dispatch to run the serial number on the gun. Officer Hartwell was told that the gun had been reported stolen. At about this time, Officer Pence gave Roberson oral warnings under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

{¶ 8}  When questioned at the scene, Roberson initially denied that there had been any kind of argument or dispute between himself and the victim. Later, he admitted that there had been an argument, but denied having made threats or having pulled a gun on the victim.

He said "he knew nothing of any type of weapon nor did he own one." Tr. 29.

{¶ 9} Roberson was taken into custody and transported to the Fairborn Police Department. While there, Officer Pence administered written *Miranda* warnings. Roberson then admitted that he had purchased the gun from a friend, and it was his.

## II. Course of the Proceedings

{¶ 10} Roberson was charged by indictment with Receiving Stolen Property, in violation of R.C. 2913.51(A), a felony of the fourth degree. Roberson filed a motion to suppress evidence based on the fact that the evidence against him was obtained without a warrant. Following an evidentiary hearing, the trial court overruled his motion to suppress. Roberson then pled no contest, was found guilty, and was sentenced to community control sanctions for a period of time not exceeding five years. He is appealing from his conviction and sentence.

{¶ 11} Roberson's assigned appellate counsel submitted a brief under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), counsel not having found any potential assignments of error having arguable merit. We concluded that there was one potential assignment of error – that the trial court erred in overruling Roberson's motion to suppress – that is not so lacking in arguable merit as to be wholly frivolous. Accordingly, the *Anders* brief filed on Roberson's behalf was rejected, and new appellate counsel was assigned. *State v. Roberson*, 2d Dist. Greene No. 2010-CA-66, 2012-Ohio-1237.

## III. There Were No Exigent Circumstances Necessitating A Warrantless Search

{¶ 12}   Roberson's sole assignment of error states:

APPELLANT'S MOTION TO SUPPRESS WAS IMPROPERLY OVERRULED BECAUSE THE EVIDENCE WAS GATHERED BY AN UNCONSTITUTIONAL, WARRANTLESS SEARCH.

{¶ 13}   In considering a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of the witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).   Consequently, in reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.   *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994), citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990).   An appellate court, however, determines as a matter of law, without deferring to the trial court's conclusions, whether the law has been appropriately applied to those facts.   *Id.,* citing *State v. Claytor*, 85 Ohio App.3d 623, 627, 620 N.E.2d 906 (4th Dist.1993).

{¶ 14}   The trial court overruled Roberson's motion to suppress evidence obtained during the warrantless search, concluding that the officers conducted their search during exigent circumstances, namely to ensure officer safety.   In its entry overruling the motion to suppress, the trial court found, in part:

For assuring their safety and the safety of anyone in the area, the officers were justified in determining whether or not the firearm alleged to have been used against the victim in this case was on his person or in the bag as previously identified by their informant.   It was this concern for officer safety

that the officers believed they needed to search the Defendant's suitcase in order to determine where the firearm was located.

* * *

This Court has determined that the emergency was ongoing at the time the officers chose to conduct the search. The Court further finds that the scope of the search did not exceed that reasonably necessary to protect the safety of the officers. In this case the officers had been specifically advised that the gun was either on the person of the Defendant in the closed bathroom or in his suitcase or backpack.

Upon entering the apartment the facts provided by the named residential informant were confirmed as the Defendant was indeed in the shower and in the living room was a suitcase and backpack. At this time the officers were faced with a circumstance unknown to them as to whether or not the Defendant was armed and could cause danger to their persons. A search of the suitcase if revealing a firearm would assure the officers that the Defendant was unarmed and they could proceed safely with that knowledge. Likewise, if a search of the suitcase and backpack failed to reveal a firearm the officers could be reasonably assured that the Defendant had the gun on his person and their response to the Defendant would have been of a different nature.

* * *

Upon duly considering this matter, the Court finds that exigent circumstances have been established by the State which required a reasonable

intrusion into the Defendant's property to safeguard the police on the scene.

The evidence supporting the finding is (1) the officers had been dispatched to the apartment based upon threat with a gun. (2) Upon arriving at the scene they spoke with the alleged victim of the crime who indicated that the suspect was in the bathroom taking a shower, that he was possibly armed and the firearm was either on his person or in a suitcase or bag in the living room. (3) Upon the officers' consensual entry into the residence they confirmed the facts provided by the informant by determining that the suspect was behind a closed bathroom door and that there was a suitcase and backpack just inside the living room. (4) The suspect had failed on multiple occasions to acknowledge the presence of the officers. Dkt. 37, pp. 3-5.

**{¶ 15}** The Fourth Amendment to the Constitution of the United States commands:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**{¶ 16}** The Fourth Amendment is made applicable to the states through the Fourteenth Amendment. *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 782 (1949), overruled on other grounds in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). For violations of the Fourth Amendment, courts are commanded to apply the exclusionary rule, suppressing use of any evidence that was illegally obtained. *Mapp* at 655.

{¶ 17} Fourth Amendment searches without a warrant are per se unreasonable and illegal in the absence of an exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967); *State v. Cosby*, 177 Ohio App.3d 670, 2008-Ohio-3862, 895 N.E.2d 868, ¶ 16 (2d Dist.). The Supreme Court of Ohio has recognized seven exceptions including the " 'presence of exigent circumstances.' " *State v. Price*, 134 Ohio App. 3d 464, 467, 731 N.E.2d 280 (9th Dist.1999). (Citation omitted.)

{¶ 18} "The exigent or emergency circumstances exception justifies a warrantless entry in a variety of situations, including when entry into a building is necessary to protect or preserve life, to prevent physical harm to persons or property, or to prevent the concealment or destruction of evidence, or when someone inside poses a danger to the police officer's safety." *State v. Sharpe*, 174 Ohio App.3d 498, 2008-Ohio-267, 882 N.E.2d 960, ¶ 48 (2d Dist.) (Citations omitted.) "In order to justify an exception to the warrant requirement, the costs involved in obtaining a warrant must be sufficiently significant to justify avoiding the delay inherent in procuring a warrant." *Id.* at ¶ 29. "[T]he state bears the burden of proving that a warrantless search or seizure meets Fourth Amendment standards of reasonableness." *Maumee v. Weisner*, 87 Ohio St.3d 295, 297, 720 N.E.2d 507 (1999) (Citation omitted.)

{¶ 19} Officers Hartwell and Pence testified at the suppression hearing. Officer Hartwell explained his decision to search the bags for a weapon:

Q. Okay. When you searched that bag – why did you search the bag looking for the gun?

A. Because we wanted to make sure that he didn't have it on him and was in the bathroom arming himself while we're making our announcements.

Q. Okay. So if you had searched the bag and not found the gun, what would have been your assumption?

A. That he would have had the gun.

* * *

Q. The question was this, Officer Hartwell, if you had not found the gun that the victim reported that the Defendant had pulled on her in that bag, what would your fear have been? Let me put it that way.

A. That he would have had the gun on him and we would approach in a totally different way. Tr. 19-20.

{¶ 20} Officer Pence explained the decision this way:

Q. Why didn't you just barge into the bathroom without looking in the suitcase? Why didn't you just go on in there?

A. If he had a weapon, going into a small bathroom like that would have been – it would have been unsafe. It could have ended with us being shot. Tr. 39-40.

{¶ 21} On cross-examination, Officer Hartwell was questioned about the need to search the suitcase, considering that it was in the living room with them while Roberson was in the shower:

Q. Okay. So when you entered the apartment [the victim] was outside and you had your guns drawn, correct?

A. Correct.

Q. And you secured the living room, the kitchen, and all the area that

you could see, correct?

A. Correct.

Q. And the bag was sitting on the floor, correct?

A. Yes.

Q. And the bag – there was no one that could get to the bag besides yourself and Officer Pence, correct?

A. Correct.

Q. So the bag was secure. No one could get to the bag besides yourself and Officer Pence?

A. Well, I mean, someone could have got to it if they wanted to.

Q. But they would have to get through you or Officer Pence to get to that bag, correct?

A. No. Once we had seen off to the kitchen, we were staying back basically between the front door and the bags making our announcements for Mr. Roberson to come out of the bathroom.

Q. Okay. Either yourself or Officer Pence could have secured that bag, stood beside it to make sure that no one opened that bag, is that correct?

A. I mean, there's a potential that someone could have come out and fought their way to it, yes.

Q. But you could have secured that bag. Is it possible for you to have secured that bag?

A. Looking back, we could have maybe pulled [it] out into the hallway.

Tr. 17-18.

{¶ 22}   Officer Pence was also cross-examined on the same subject:

Q. And, in this case, [the victim] was outside, correct?

A. Correct.

Q. And you had secured the living room, correct?

A. Correct.

Q. And you had your guns drawn so you yourself, were as secure as you could be, correct?

A. Correct.

Q. And instead of – and you were standing by the suitcase, correct?

A. Correct.

Q. So no one could come and open that suitcase? No one could get into the contents of that suitcase without going through yourself or Officer Hartwell, correct?

A. That is correct.   Tr. 38.

{¶ 23}   On cross-examination, Officer Pence further explained that the apartment was secure while Roberson was in the shower:

Q. So Miss Austin had stated that the gun was either with Mr. Roberson in the bathroom or in the bag, correct?

A. That is correct.

Q.   And you had secured the apartment as well as you could at that time?

A. Correct.

Q. So if he were to come out of the bathroom, you or Officer Hartwell would be able to observe him coming out of the bathroom, correct?

A. Correct.

Q. So you could have waited for him to exit the bathroom and still had that secure, correct?

A. Correct.   Tr. 40.

**{¶ 24}** The issue is close.   As in many Fourth Amendment cases, there are a number of competing interests.   As the trial court noted, this Court has a long history of concern for officer safety.   *State v. Kolb*, 2d Dist. Montgomery No. 20601, 2005-Ohio-1209, ¶ 39. However, the important interest in officer safety cannot be used as a talisman to allow warrantless searches under any circumstance.   We are guided by the principle that searches without a warrant are per se illegal in the absence of an exception to the warrant requirement. It is the State's burden to demonstrate that an exception to the warrant requirement exists under the particular facts of the case before us.

**{¶ 25}** At the close of the suppression hearing, counsel for the State argued that the exigent circumstance was the weapon itself.   Tr. 46.   However, the mere presence of firearms does not create an exigent circumstance.   *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir.1994); *State v. Sharpe*, 174 Ohio App.3d 498, 2008-Ohio-267, 882 N.E.2d 960, at ¶ 50 (2d Dist.).

**{¶ 26}** Furthermore, we do not agree that the search of the suitcase necessarily would increase officer safety.   The search of the suitcase would result in one of two scenarios.

First, if a firearm was found in the suitcase, then the firearm had already been secured by the police and therefore the firearm posed no immediate risk to anyone, including the officers. Under this scenario, the search of the suitcase would do nothing to increase officer safety. We acknowledge that the discovery of the gun in the suitcase may have provided the police with additional comfort or relief as they ultimately approached the bathroom to get Roberson to exit. But the search of the suitcase itself in an apartment that had already been secured would not increase officer safety.

{¶ 27} On the other hand, discovery that the weapon was not in the suitcase would do nothing to secure the safety of the officers "as the whereabouts of the gun would still be unknown." *State v. Simmons*, 4th Dist. Highland No. 05CA4, 2006-Ohio-953,¶ 43. While it is true that the discovery that the gun was not located in the suitcase may have put the officers on heightened alert that Roberson may have the gun on his person in the bathroom, the officers had already been made aware that this was a possibility. Indeed, beginning with their entry into the apartment, the officers had proceeded with their guns drawn, as if Roberson had the gun on his person. This is completely understandable given that police officers often have to proceed with the utmost caution, assuming the worst-case scenario, in order to ensure the protection of the public and themselves. This is especially true when a firearm is involved. While we do not minimize the need for officer safety, we do not agree that the search of the suitcase was necessary or helpful to ensure officer safety in the particular facts of this case.

{¶ 28} Although any additional information regarding the whereabouts of a gun may help officers develop a better plan in fluid situations, the Fourth Amendment does not allow the State to use evidence obtained from a warrantless search unless the State can carry its

heavy burden of showing exigent circumstances. When the officers arrived at the apartment, the alleged victim was waiting safely outside, while Roberson was inside the apartment in the shower. The officers could have waited for Roberson to answer the knocks on the front door before they entered the premises. Instead, the alleged victim gave the officers permission to go inside the apartment and approach Roberson. The victim remained safely outside as the officers entered with their guns drawn. The reason the officers had their guns drawn was to increase their safety. Once inside, the officers quickly secured the premises while Roberson was showering in the bathroom. At this point, the officers could have called for a search warrant while they continued to secure the premises. The officers could have restricted Roberson's access to any places elsewhere in the apartment where the firearm might be, which had already been established as the suitcase and the book bag. Instead, the officers decided to conduct a warrantless search of Roberson's suitcase. The State argues that this warrantless search was necessitated by the fact that the officers, in order to ensure their safety, needed to know in an expedited fashion whether or not the firearm was in Roberson's suitcase or whether it was instead in Roberson's possession in the bathroom. We do not agree.

{¶ 29} The alleged victim was waiting outside and the officers had the apartment secure. Furthermore, the officers had Roberson's suitcase and other bags secured. There was no inherent need to act without a warrant given the fact that Roberson was in the bathroom and no confrontation had occurred with the police. The officers had a number of options, including waiting for a search warrant to search Roberson's bags, exiting the apartment and waiting for Roberson to answer the door or exit the apartment, or remaining in the apartment, with their guns drawn, waiting for Roberson to exit the bathroom. The

officers are better trained and suited for making the choice between these options than we are. However, the particular facts of the case before us do not support a finding that exigent circumstances existed that would allow the officers to search Roberson's suitcase in order to increase their safety.

{¶ 30}   The assignment of error is sustained.


## IV. Conclusion

{¶ 31}   Roberson's assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

FROELICH and HENDON, JJ., concur.

(Hon. Sylvia Sieve Hendon, First District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Stephanie R. Hayden
Bradley S. Baldwin
Stephen Wolaver