[Cite as *State v. Williams*, 2013-Ohio-368.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98100**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CARLOS WILLIAMS

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-548880

**BEFORE:** Kilbane, J., Stewart, A.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 7, 2103

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street - 2nd Floor
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Maxwell M. Martin
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Carlos Williams ("Williams"), appeals his sentence and the trial court's judgment denying his motion to suppress. For the reasons set forth below, we reverse and remand.

{¶2} In April 2011, Williams was charged in an eight-count indictment. Count 1 charged him with drug trafficking and carried forfeiture specifications, a juvenile specification, a schoolyard specification, and a one-year firearm specification. Count 2 charged him with drug possession and carried forfeiture specifications and a one-year firearm specification. Count 3 charged him with having a weapon while under disability and carried a forfeiture specification. Count 4 charged him with carrying a concealed weapon and carried a forfeiture specification. Count 5 charged Williams with possessing criminal tools and carried forfeiture specifications. Count 6 charged him with endangering children. Count 7 charged him with resisting arrest, and Count 8 charged him with tampering with evidence.

{¶3} In July 2011, Williams filed a motion to suppress the evidence obtained as a result of the search warrant issued and executed against him. Specifically, he argued that there was insufficient probable cause to issue the search warrant. The state of Ohio ("State") opposed, and the trial court held a hearing on the motion November 14, 2011. The following evidence was adduced at the suppression hearing.

{¶4} Detective David Carpenter ("Carpenter") of the Euclid Police Department

testified that in March 2011 he conducted an investigation of Williams based on information he obtained from a confidential informant ("CI"). The CI advised that "Rico," who was later determined to be Williams, was trafficking drugs in Euclid, Ohio. On March 18, 2011, Carpenter participated in a controlled drug transaction with the CI and Williams. The CI was fitted with a recording device and placed a call to Williams requesting heroin. Carpenter then drove the CI in an undercover vehicle to the area of East 200th Street and Goller Avenue in Euclid. Williams was driving a Chevy Impala. Carpenter drove the undercover vehicle up to the Chevy Impala where Williams handed Carpenter two baggies containing heroin in exchange for the buy money.

{¶5} Carpenter ran the registration to the Chevy Impala and determined that it was a rental car registered to Kristin Jones ("Jones"). Carpenter then found a May 2009 Euclid police report for criminal assault with Jones and Williams both named in the report. Carpenter obtained a photo of Williams and personally identified Williams as the person who handed him the heroin in exchange for the money. Carpenter also showed the photo to the CI, who identified Williams only as "Rico." The CI told Carpenter that he previously purchased heroin from Williams at 719 East 162nd Street in Cleveland. The CI did not give Carpenter a date or time frame when the previous drug purchase had taken place. Rather, the CI told Carpenter that the drug purchase was recent, sometime before the controlled buy on March 18, 2011.

{¶6} The CI also told Carpenter that he has seen Williams on occasion drive a brown Buick and a blue Audi. When Carpenter and the CI arrived at the East 162nd

Street address, Carpenter observed a brown Buick and a blue Audi parked at the residence, which is a duplex with upstairs and downstairs units. Carpenter ran the registration to the two vehicles and determined that the Buick was registered to Angela Reese ("Reese"), who Carpenter testified was the upstairs resident, and the Audi was registered to Carvel Rogers ("Rogers"). Carpenter then found a February 2009 Euclid police report where Williams was arrested for driving under suspension with Reese as a passenger in the vehicle, and a January 2011 Euclid police report where Williams was arrested for a traffic violation while driving a vehicle registered to Rogers. All three of these police reports listed Williams's address as 5234 East 205th Street in Euclid, Ohio.

{¶7} Subsequently, on March 28, 2011, Carpenter executed a trash pull from the East 162nd Street residence in the city of Cleveland. At that time, a Dodge Charger was parked in front of the house, which was determined to have been rented by Jones. Carpenter testified that the garbage bags were in trash cans placed on the tree lawn. There was nothing on the trash cans to identify whether the trash was from the upstairs unit or the downstairs unit. Carpenter recovered several items from the garbage, including numerous utility bills addressed to Reese at "719 E. 162nd up," empty sleepinal capsules (a common heroin cutting agent), and packing material frequently used in drug trafficking. Some of this packing material was field-tested and found to have cocaine, heroin, and marijuana residue on it. Carpenter also recovered a four-month old letter from Harbor Light, a rehabilitation facility, with Williams's name on it. At the suppression hearing, Carpenter testified that the letter did not have an address for

Williams on it, it only had Williams's name on it. Carpenter further testified that the only address he had for Williams was 5234 East 208th Street in Euclid, Ohio. Carpenter acknowledged that this address was the same address listed in all three police reports he reviewed as part of his investigation, with the most recent report dated January 2011, which was two months prior to the controlled buy.

{¶8} On March 30, 2011, Carpenter executed an affidavit and obtained a search warrant for the 719 East 162nd Street residence. Carpenter, along with fellow officers from the Euclid Police Department and officers from the Cleveland Police Department SWAT team, executed the search warrant on March 31, 2011, at approximately 5:40 a.m. The SWAT team knocked on the door and announced "police search warrant, come to the door." They received no response so they used a battering device to force entry into the residence. At the same time, Carpenter observed Williams open a bedroom window for the upstairs unit and climb out onto the second floor porch. Williams threw a duffle bag from the porch into the neighbor's backyard. The duffle bag was secured by a Euclid police officer. Williams, who was still on the porch, refused to comply with the officers instructions to go back into the residence.

{¶9} Williams then jumped off the porch and the officers pursued him by foot for two blocks before he was apprehended. Inside the duffel bag, officers found a large sum of money, drugs, and drug paraphernalia. Inside the bedroom that Williams climbed out of, the officers found money, drugs, and a cell phone.

{¶10} On December 30, 2011, the trial court denied Williams's motion to

suppress, finding that the State sufficiently demonstrated probable cause for the issuance of the search warrant. Williams then pled no contest to the charges, and the trial court found him guilty of all counts and specifications. The trial court merged Counts 1 and 2 for purposes of sentencing and sentenced Williams to five years in prison on Count 1. The trial court ordered that the one-year firearm specification on Count 1 be served prior to and consecutive with the five-year sentence on Count 1 for total of six years. The court sentenced Williams to two years on Count 3, 18 months on Count 4, 12 months on Count 5, six months on Count 6, 90 days on Count 7, and two years in prison on Count 8. The trial court ordered that Counts 3-8 be served concurrent to each other, with Count 1 being served consecutive to Count 3 for an aggregate of eight years in prison.

{¶11} Williams now appeals, raising the following three assignments of error for review.

### ASSIGNMENT OF ERROR ONE

The trial court erred in denying [Williams's] motion to suppress the evidence.

### ASSIGNMENT OF ERROR TWO

The trial court erred in failing to merge all allied offenses.

### ASSIGNMENT OF ERROR THREE

The trial court acted contrary to law when it imposed consecutive sentences without authority to do so under the Ohio Revised Code.

### Motion to Suppress

{¶12} In reviewing a trial court's ruling on a motion to suppress, the reviewing

court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. *State v. DePew*, 38 Ohio St.3d 275, 277, 528 N.E.2d 542 (1988); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. *See State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994), citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990). The reviewing court, however, must decide de novo whether, as a matter of law, the facts meet the appropriate legal standard. *Id.*; *see also State v. Claytor*, 85 Ohio App.3d 623, 627, 620 N.E.2d 906 (4th Dist.1993).

**{¶13}** The Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution require that a warrant only be issued if probable cause for the warrant is demonstrated through an oath or affidavit. *State v. Strothers*, 8th Dist. No. 97687, 2012-Ohio-5062, ¶ 19, quoting *State v. Mays*, 2d Dist. No. 23986, 2011-Ohio-2684, citing *State v. Robinson*, 2d Dist. No. 20458, 2004-Ohio-5281.

**{¶14}** Within the first assigned error, Williams primarily argues the trial court erred when it denied his motion to suppress because there was insufficient probable cause in Carpenter's affidavit supporting the search warrant. In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the duty of the reviewing court is to determine whether the issuing judge or magistrate had a substantial basis to conclude that probable cause existed. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus, following *Illinois v. Gates*, 462 U.S.

213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "[T]he issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at paragraph two of the syllabus. Neither a trial court nor an appellate court should substitute its judgment for that of the issuing judge or magistrate by conducting a de novo review. *Id.* at 238-239.

{¶15} Williams claims that the affidavit was not corroborated with reliable and timely evidence to establish drug sales were occurring from the East 162nd Street residence. In support of his argument, he notes that officers never conducted any surveillance at the East 162nd Street residence and never observed a drug transaction at the East 162nd Street residence, and the letter found in the trash, with only Williams's name on it and without an address, was dated four months prior to the issuance of the search warrant.

{¶16} In the instant case, we cannot find a substantial basis for the existence of probable cause in the affidavit underlying the search warrant. There is no indication in Carpenter's affidavit that Williams resides at the East 162nd Street residence in Cleveland. Rather, Reese was the only person named in the affidavit as the resident of the upstairs unit. The only known address Carpenter had for Williams was 5234 East 208th Street in Euclid, which was the same address listed in the three different police reports he reviewed, with the most recent report dated approximately two months before the controlled buy in March 2011. Furthermore, the reports connecting Williams with

Reese and Rogers were for traffic offenses, not for drug activity. The affidavit is silent with respect to observing Williams or anyone else ever entering the East 162nd Street residence. The affidavit is also silent with respect to the police conducting any surveillance of criminal activity, or any surveillance whatsoever. There were no complaints from neighbors or council representatives of suspected drug activity, pedestrian traffic, or vehicular traffic at the East 162nd Street residence. Moreover, the CI only knew Williams as "Rico" and the affidavit is silent as to when the CI purchased heroin from "Rico" at the East 162nd Street residence. The affidavit fails to indicate whether the previous drug buy occurred several days or several weeks prior to the controlled buy on March 18, 2011.

{¶17} In *State v. Gales*, 143 Ohio App.3d 55, 61-62, 757 N.E.2d 390 (8th Dist.2001), *discretionary appeal not allowed by*, 92 Ohio St.3d 1445, 751 N.E.2d 483 (2001), we stated that:

> [A]n affidavit for a search warrant must contain timely information. *State v. Jones* (1991), 72 Ohio App. 3d 522, 526, 595 N.E.2d 485. "Proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case." *Id.*, quoting *Sgro v. United States* (1932), 287 U.S. 206, 210, 53 S. Ct. 138, 140, 77 L. Ed. 260, 263.
>
> Because probable cause to search "is concerned with facts relating to a presently existing condition," * * * there arises the "unique problem of whether the probable cause which once existed has grown stale." *United States v. Spikes* (C.A.6, 1998), 158 F.3d 913, 923. * * * The key issue is whether the alleged facts justify the conclusion that the subject contraband is probably on the person or premises to be searched. [*State v. Jones* (1991), 72 Ohio App. 3d 522, 526, 595 N.E.2d 485.] Variables to consider include how perishable the item to be seized is and whether the information

in the affidavit relates to a single isolated incident or a protracted ongoing criminal activity. *State v. Floyd* (Mar. 29, 1996), 1996 Ohio App. LEXIS 1152, Darke App. No. 1389, unreported. [*State v. Barnes*, 2000 Ohio App. LEXIS 982 (Mar. 16, 2000), Franklin App. No. 99AP-572, unreported.]

Part of the asserted probable cause forming the basis on the search warrant in this case included a four-month-old letter, with Williams's name on it and without an address, and the CI's tip that he purchased heroin from "Rico" at the East 162nd Street residence. The letter, without an address for Williams, is insufficient, especially in light of the fact that Carpenter had three other police reports listing 5234 East 208th Street in Euclid as Williams address, with the most recent report dated two months prior to the controlled buy. Additionally, it is unknown whether the previous drug buy occurred several days or several weeks prior to the controlled buy on March 18, 2011. Thus, given the circumstances of this case, we cannot say that the four-month-old letter, without an address, and a previous undated drug buy sufficiently linked Williams to the East 162nd Street residence.

{¶18} Furthermore, the trash pull did not support that Williams resided at the East 162nd Street address. While the single trash pull did reveal various drug paraphernalia that tested positive for drug residue and a four-month-old letter, with only Williams's name on it and without an address, the discovery of this evidence must be viewed in isolation. Carpenter testified that when they conducted the trash pull, there was nothing on the trash cans identifying whether the trash was from the upstairs unit or the downstairs unit. Carpenter further testified that the only address he had for Williams was 5234 East 208th Street in Euclid, which was the same address listed in the three police

reports he reviewed. When viewed in this light, it does not establish in any way that Williams resides at the East 162nd Street address, and does not, of itself, give rise to probable cause to issue a search warrant. *See State v. Weimer*, 8th Dist. No. 92094, 2009-Ohio-4983, ¶ 25, *discretionary appeal not allowed by,* 124 Ohio St.3d 1493, 2010-Ohio-670, 922 N.E.2d 228, citing *United States v. Elliott*, 576 F.Supp. 1579 (S.D. Ohio 1984). *See also State v. Kelly*, 8th Dist. No. 91137, 2009-Ohio-957.

**{¶19}** In *Weimer*, the Euclid police received an anonymous complaint about a "known drug trafficking suspect" residing at 225 East 216th Street in Euclid, Ohio. The officer conducted limited surveillance of the residence, which was defendant-Weimer's home. More than one year after that surveillance, a Euclid officer conducted a trash pull from the residence, which revealed items that tested positive for cocaine. A search warrant of the residence naming Weimer's codefendant was obtained. The police found drugs and other items upon execution of the warrant. Weimer was indicted on multiple drug charges and sought suppression of the evidence seized by the police. The trial court granted Weimer's motion, finding that there was conflicting information as to the codefendant's residence, and that probable cause did not support issuance of the warrant.

**{¶20}** We affirmed on appeal, agreeing that suppression was proper. After certain misrepresentations were excised from the affidavit, the remaining information regarding the single trash pull was insufficient to support the issuance of the warrant. *Id.* at ¶ 25. In reaching our decision, we acknowledged the line of cases upholding warrants based upon evidence garnered from single trash pulls. *Id.* However, we noted that in those

cases, the facts underlying probable cause were much stronger, and included extensive and continuous surveillance by police and heavy foot traffic to and from the known target residence of the suspected drug dealer that is indicative of drug transactions. *Id.*[1]

{¶21} In *Kelly*, we found that the affidavit in support of the search warrant lacked probable cause. *Kelly* involved a single trash pull from the known residence of defendant after police received complaints of pedestrian traffic, noise, and drug activity. In finding insufficient basis for the existence of probable cause, we noted that the officers failed to conduct any follow-up investigation, surveillance, or a controlled buy at the residence. *Id.* at ¶ 17.

{¶22} In *Elliot*, the United States District Court for the Southern District of Ohio found that the affidavit in support of the search warrant lacked probable cause. *Elliot* involved the police's reliance on a single trash pull for purposes of securing a search

---

[1]In another case involving the Euclid Police Department, *State v. Clark*, 8th Dist. No. 96768, 2012-Ohio-2058, *discretionary appeal not allowed*, 2012-Ohio-4650, we reversed the trial court's judgment denying Clark's motion to suppress. In *Clark*, the police received anonymous tips that Clark was selling drugs from his apartment and in the apartment parking lot. The police conducted surveillance of the apartment building, but did not observe any criminal activity. The officers then decided to conduct a "knock and talk" with Clark. Four Euclid police officers and two uniformed security officers waited for Clark to open his apartment door. When Clark opened the door, the officers immediately surged forward into the doorjamb, making it impossible for Clark to shut the door. Once inside, the officers observed marijuana in Clark's bedroom and a shotgun, a digital scale, plastic baggies, and rubber bands in his closet. We found that under the totality of these circumstances, Clark did not voluntarily consent to the officers' entry into and search of his apartment. *Id.* at ¶ 21. While *Clark* involved the voluntariness of his consent, it is instructive of the instances where officers failed to obtain surveillance of any criminal activity and used other means, such as "knock and talk," to develop probable cause.

warrant of Elliot's residence. Although the affidavit also described anonymous complaints of drug activity and the affiant's own surveillance of the property, it failed to specify the time period and, therefore, could not be considered. *Id.* at 1581. Left solely with evidence of an unspecified "quantity of partially smoked marijuana cigarettes and several stems from marijuana stalks" found in Elliot's trash, the court concluded that the discarded contraband standing alone was insufficient to support a determination of probable cause. *Id.*

{¶23} Just as in *Weimer*, *Kelly*, and *Elliot*, the four corners of the affidavit in the instant case lacked a substantial basis for the existence of probable cause. Here, the police had no documentation that the East 162nd Street address in Cleveland was Williams's known residence. Significantly, Carpenter testified that the address he had for Williams was in the city of Euclid. This Euclid address was listed on the three police reports Carpenter reviewed as part of his investigation, with the most recent report dated two months before the controlled buy. Carpenter only names Reese in the affidavit as a resident of the upstairs unit. Additionally, the reports connecting Williams with Reese and Rogers were for traffic offenses, not for drug activity.

{¶24} Furthermore, aside from the single trash pull, the Euclid police failed to connect Williams to the Cleveland residence by failing to conduct any follow-up investigation or surveillance. The affidavit fails to state that the police observed Williams or anyone else at the East 162nd Street residence, nor did they conduct a controlled buy from Williams at the residence, or observe anyone engaging in any

criminal activity or a large amount of pedestrian or vehicular traffic that would indicate drug selling at the residence. Moreover, the affidavit fails to indicate whether the CI's previous drug buy at the residence occurred several days or several weeks prior to the controlled buy on March 18, 2011.

{¶25} The United States Supreme Court in *Gates* requires a "common sense review" of the totality of circumstances surrounding the affidavit and evidence. *Gates,* 462 U.S. at 273. When employing this "common sense" review, we cannot say that under the totality of these circumstances Carpenter's affidavit established probable cause sufficient to issue the search warrant. *See Weimer* at ¶ 27, citing *Elliot*.

{¶26} Accordingly, the first assignment of error is sustained.

{¶27} In the second and third assignments of error, Williams challenges his sentence. He argues the trial court erred by failing to merge the having a weapon while under disability count (Count 3) with the carrying a concealed weapon count (Count 4) and that the trial court was not authorized to impose a consecutive sentence. However, based on our disposition of the first assignment of error, the second and third assignments of error are overruled as moot. App.R.12(A)(1)(c).

{¶28} Judgment is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common

pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

MELODY J. STEWART, A.J., and
EILEEN A. GALLAGHER, J., CONCUR