OPINION
{¶ 1} Kenneth Cunningham appeals from his conviction in the Montgomery County Common Pleas Court of Trafficking in Marijuana.
 {¶ 2} The facts underlying this appeal are set out in the State's brief and are not in dispute.
 {¶ 3} On December 16, 2002, a Montgomery County Grand Jury indicted appellant Kenneth Cunningham for one count of trafficking in marijuana in violation of O.R.C. § 2925.03(A)(2). On January 14, 2003, defendant entered a not guilty plea. On January 28, 2003, defendant filed a Motion to Suppress. A hearing on the issue was held on March 23, 2003. The trial court entered a Decision and Entry overruling Defendant's Motion to Suppress on April 10, 2003. On June 6, 2003, defendant entered a plea of no contest and was found guilty of trafficking in marijuana. On August 12, 2003, defendant filed his timely Notice of Appeal.
 {¶ 4} On November 13, 2002, at approximately 5:00 p.m., Officer John Beall was working as a patrol officer at 3620 Germantown Street (a.k.a. the "GG Carryout") in Dayton, Ohio, Montgomery County. Officer Beall was assigned to the "Third District" and was handling calls for service and enforcing the traffic and criminal laws. Officer Beall was also conducting field interviews, which are part of his patrol duties deterring crime. While in the parking lot of the establishment, Officer Beall witnessed Defendant Cunningham exit a gray four-door Pontiac and enter the carry-out.
 {¶ 5} Officer Beall walked past the Pontiac and glanced inside the side window and noticed a "significant" amount of cash lying on the front seat. Officer Beall also observed that keys were in the ignition. Beall recognized the Pontiac as one Cunningham had been driving in July 2002 when he was arrested.
 {¶ 6} Officer Beall entered the carry-out and asked Cunningham if he owned the Pontiac. Defendant replied that he did. Officer Beall explained to Cunningham that he should neither leave his keys in the ignition nor leave cash lying in plain view. Beall told Cunningham to take the keys out of the ignition and Beall then left the carry-out.
 {¶ 7} Officer Beall saw Cunningham leave the carry-out, walk past the Pontiac, and get into a van driven by a woman, and leave the parking lot. Officer Beall approached the Pontiac in an effort to remove the keys from the ignition, but he found the doors locked. Beall then contacted a towing company to unlock the car door so that Officer Beall could hold the money and keys for Defendant. At this time, Officer Beall learned that the title to the Pontiac was not in Defendant's name. Officer Beall wanted to hold the money and keys for Defendant because the Pontiac was parked in a high traffic area. Officer Beall also knew that the owner of the carry out had made numerous complaints regarding "subjects loitering on the lot, subjects selling drugs, drinking beer on the lot." Therefore, Officer Beall feared that the car would be broken into and stolen because the keys were in the ignition.
 {¶ 8} A tow truck arrived and the driver successfully unlocked the Pontiac. As Officer Beall was reaching into the car to retrieve the keys and cash, he immediately smelled a strong odor of marijuana. Officer Beall picked up the cash and keys and also recovered Cunningham's driver's license and credit card. Officer Beall found a brown bag under the driver's-side front seat while he was investigating the strong marijuana odor. Officer Beall retrieved the bag, looked inside, and found approximately fifteen to twenty bags of what appeared to marijuana. As a result of finding the drugs, Officer Beall then had the vehicle towed.
 {¶ 9} In overruling Cunningham's suppression motion, the trial court provided the following analysis:
 {¶ 10} "In making a determination of the legality of Officer Beall's entry into the gray Pontiac, the Court must look at the facts that lead to the entry into the vehicle and the purpose of the officer's entry into the vehicle.
 {¶ 11} "In analyzing the facts we have an experienced police officer patrolling a high crime area. He encounters a vehicle which has cash laying on the front seat with the vehicle's keys in the ignition. He has an acknowledgment from the Defendant that the vehicle was his, but the Defendant failed to retrieve
either the keys or the cash from the vehicle after being informed of the situation. The Defendant leaves the area of the vehicle, the officer runs a license check and discovers that the vehicle is not registered in the Defendant's name. At that time he had two options; one, to ignore the situation, and the other to attempt to prevent a possible crime i.e. auto theft, etc., the officer selected the proper proactive position of crime prevention and entered the vehicle.
 {¶ 12} "The officer testified that the purpose of his entering into the vehicle was to secure the cash and keys, holding them for the owner of the vehicle. This testimony isuncontroverted. What we have here is an officer doing `community policing' by attempting to prevent a likely crime rather than enforcing laws which have already been violated. His entry into the vehicle was legal.
 {¶ 13} "Since the officer's entry into the vehicle was legal, the next issue to resolve is whether the limited search of the vehicle was legal. Here again the facts are important. We have an experienced police officer who recognizes the odor of marijuana, and that his search after taking possession of the cash, keys, driver's license and credit card of the Defendant was limited to the interior of the Pontiac.
 {¶ 14} "The search in this case involves what has been referred to as the `plain smell rule.' For purposes of search and seizure, Courts have acknowledged the use of a person's senses; sight, touch, hearing and smell to identify drugs or contrabandMinnesota v. Dickenson (1993), 508 U.S. 366; Johnson v. UnitedStates (1948), 333 U.S. 10, at 13; Taylor v. United States
(1932), 286 U.S. 1. In this matter we have a qualified officer who identified the distinctive odor of marijuana and simply followed his nose to the contraband seized.
 {¶ 15} "In this case we do not have a traffic stop which normally leads up to this type of search. However, we do have a vehicle which was left in a tenuous situation. Maryland v.Dyson (1999), 527 U.S. 465; United States v. Ross (1982),456 U.S. 798; State v. Mills (1992), 62 Ohio St.3d 357. Because marijuana can be easily and quickly hidden or destroyed, a warrantless search was justified to preserve the evidence. Statev. Moore (2000), 90 Ohio St.3d 47. Also see United States v.Gitan-Acevedo (C.A. 6, 1998), 148 F.3d 577."
 {¶ 16} In a single assignment of error, Cunningham argues that Officer Beall did not have reasonable grounds to unlock Cunningham's car and enter it. He argues that even if he violated R.C. 4511.661 by leaving his key in the ignition of his automobile the police officer should have merely given him a ticket rather than enter it to remove the key and the cash which was in plain view. Cunningham argues that even if
 {¶ 17} Officer Beall was justified in unlocking his car he lacked probable cause to search it because Beall did not have probable cause to believe there was marijuana in the vehicle. In particular, Cunningham notes that Beall did not testify he was familiar with the smell of marijuana as required by State v.Moore (2000), 90 Ohio St.3d 47.
 {¶ 18} The State argues that Officer Beall's entry into Cunningham's car was reasonable under all the circumstances both for law enforcement purposes and for furthering a community care-taking function. The State argues the search conducted by Beall under the front seat was reasonable because Officer Beall smelled the strong smell of marijuana inside the vehicle.
 {¶ 19} As we mentioned earlier, the facts presented the trial court were not in dispute. We must, however, determine de novo
whether the trial court's conclusions of law are correct. Statev. Klein (1991), 73 Ohio App.3d 486, 488.
 {¶ 20} The Fourth Amendment bars only unreasonable searches and seizures. Maryland v. Biue (1990), 494 U.S. 325. We agree with the trial court's conclusion that Officer Beall acted reasonably when he decided to enter Cunningham's car to remove the keys he had left in the ignition while a significant amount of money lay exposed on the front seat of the vehicle. The vehicle was parked in a parking lot of a carry-out and Officer Beall had received complaints of subjects loitering in that parking lot selling drugs and drinking beer. (Tr. 5). Beall also indicated there was a great deal of vehicular traffic in that area. (Tr. 5). Beall had told Cunningham twice to remove the keys from his unattended car and Cunningham ignored Beall and left the area in another vehicle.
 {¶ 21} Officer Beall had two legitimate reasons to enter the car Cunningham left unattended. One reason was to remove the keys which were in the vehicle's ignition to prevent the theft of the vehicle;[1] the other was to secure the unattended currency for safe keeping. Also in Cady v. Dombrowski (1973),413 U.S. 441, the United States Supreme Court upheld the trunk search of a car towed to a private lot which was involved in an accident when the officer reasonably believed the car contained a gun which was vulnerable to intrusion by vandals. The Court noted that police often engage in "community care-taking functions" totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.
 {¶ 22} Additionally, citizens have a lesser expectation of privacy in their automobiles because much of what is contained inside a vehicle can be seen from outside the vehicle and because of the ambulatory nature of the vehicle itself. Chambers v.Maroney (1970), 399 U.S. 42. There is no suggestion in this record that Beall intended to do anything but enter the vehicle to remove the keys and money which both could be seen from outside the vehicle. It was only upon opening the vehicle's driver's door that Beall smelled the strong odor of marijuana that justified the search of the area underneath the front driver's seat.
 {¶ 23} Cunningham also contends Beall did not have probable cause to believe that marijuana was present in his car because the officer did not demonstrate to the trial court that he was qualified to recognize the smell of marijuana. Cunningham cites this court to State v. Moore, supra.
 {¶ 24} In Moore, the Ohio Supreme Court held the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search of an automobile pursuant to the automobile exception to the warrant requirement. In Moore, the arresting officer testified regarding his extensive training and experience in identifying and detecting the smell of marijuana.
 {¶ 25} In this case, Officer Beall, a police officer with fourteen years of experience as a patrol officer, testified, without objection, that he smelled a strong odor of marijuana emanating from the automobile. Presumably, defendant's counsel did not question that Officer Beall could smell marijuana in light of his extensive experience as a police officer. Had counsel objected, the prosecutor could have inquired further of Beall as to his training and experience in being familiar with the smell of marijuana.
 {¶ 26} Cunningham's suppression motion focused instead upon Beall's initial entry into his vehicle. He argued that Beall had no reason to believe Cunningham had committed any crime and thus Cunningham's car should not have been unlocked and entered by Beall. Defense counsel argued that the marijuana was discovered as a "fruit of the poison tree," the illegal entry into the vehicle. Counsel did not argue in the motion or at the hearing that the trial court should suppress the marijuana because Officer Beall was not qualified to smell the marijuana. Legal issues which are not raised in the trial court may not generally be raised for the first time in the appellate court. The general rule is that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus; see also, State v. Phillips
(1971), 27 Ohio St.2d 294, where the defendant did not raise below the constitutional issue that the arrests at the motel, which is not in the City of Dayton, were unlawful because they were conducted by Dayton police officers.
 {¶ 27} Accordingly, appellant's assignment of error must be overruled. The judgment of the trial court is affirmed.
Grady, J., and Young, J., concur.
[1] R.C. 4511.661 provides that it is a minor misdemeanor for a person driving a motor vehicle to leave it unattended with the keys in the ignition. Therefore, Beall had a legitimate law enforcement reason for entering Cunningham's vehicle.