[Cite as *State v. Upchurch*, 2021-Ohio-2143.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-20-1130

    Appellee                                 Trial Court No. CR0201902580

v.

Brandon Upchurch                          **DECISION AND JUDGMENT**

    Appellant                                Decided:  June 25, 2021

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Grant Kozy, Assistant Prosecuting Attorney, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} Appellant, Brandon Upchurch, appeals the judgment entered by the Lucas

County Court of Common Pleas on July 14, 2020, sentencing him to a term of two years

of community control.[1]  For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} Appellant sets forth the following assignment of error:

The Trial Court committed reversible error by denying Appellant's Motion to Suppress as there was no reasonable suspicion that Appellant was engaged in illegal activity that would warrant police interaction and the search of Appellant's vehicle was an unconstitutional search and seizure.

**Statement of the Case**

{¶ 3} On September 9, 2019, appellant was indicted for improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(B) and (I), a felony of the fourth degree.

{¶ 4} On January 21, 2020, appellant filed a motion to suppress, arguing that the evidence against him was obtained as the result of an illegal search and seizure.  On March 6, the trial court conducted a hearing on the matter.  On March 17, 2020, the trial court denied appellant's motion to suppress.

{¶ 5} On July 14, 2020, appellant pleaded no contest to the indictment.  The trial court found him guilty.  The trial court imposed a sentence of two years of community control.

---

[1] We note that the state mistakenly asserted in its brief that appellant was sentenced to a term of 18 months in prison.

2.

## Statement of the Facts

{¶ 6} Detective Donovan testified that on May 25, 2019, at around 8:20 p.m., he was working a "stop program" in the 800 block of Walnut, around the Greenbelt Place apartment complex. At this time, Donovan was assigned to the gang task force, and was focusing on areas of Toledo that experienced a high number of violent crimes. Donovan was specifically tasked with going to the Greenbelt Place housing complex as a result of shooting incidents in the area and the statistical probability, as calculated by the Toledo Police Department, that violent crime would be occurring in that location during the time in question.

{¶ 7} Donovan and his partner, Detective Robert Bascone, were in a "limited marked police vehicle in full uniform," when they pulled into the parking lot of the apartment complex and immediately smelled burnt marijuana coming from the area. Donovan stated that there were only two cars in the parking lot, one of which was occupied by appellant and his passenger. Donovan observed that appellant's vehicle was backed into a parking spot, with its windows rolled down and with the engine running. Donovan drove his vehicle around appellant's vehicle, noticed the smell of burning marijuana was stronger as they drove around appellant's vehicle, and then parked near appellant's vehicle. Donovan parked his police cruiser and attempted to initiate a casual encounter to investigate the smell.

{¶ 8} As Donovan and his partner approached appellant's vehicle, appellant and his passenger rolled up the windows, "very quickly" exited the vehicle, and then attempted to walk away. Donovan asked the two to stop, and they immediately complied, within feet of appellant's vehicle. Donovan stated that he could see clearly through the vehicle's windows and that he noticed an open container of what he believed to be vodka in the center cup holder area. Appellant complied with Donovan's request to provide his information, and Donovan discovered that appellant had a warrant out for his arrest. Once the warrant was verified, appellant was taken into custody. In addition, appellant was issued a traffic citation for having an open container of intoxicating liquor inside a motor vehicle.[2]

{¶ 9} Donovan testified that appellant's vehicle was then secured, inventoried, and towed pursuant to department policy, because it was parked on government property and because the officers had verified that neither appellant nor his passenger lived at the apartment complex.[3] As part of securing the vehicle and its contents, Donovan gained entry to the vehicle with a lock-out kit. Donovan opened the door from the driver's side and immediately encountered a handgun, with a very large extended magazine on it,

---

[2] Although Donovan testified that he smelled alcohol on appellant's breath, that appellant was intoxicated, and that appellant was placed under arrest "after he began screaming and yelling," appellant was not subjected to any kind of field sobriety test, nor was he charged with any OVI or disorderly conduct offense.

[3] Although Donovan testified that the police report stated that the vehicle was searched "incident to arrest," and that the search took placed while appellant was in handcuffs and in the backseat of Donovan's squad car, Donovan further testified that the vehicle was searched "[a]lso as part of an inventory."

4.

sticking out of the pocket of the driver's side door. Further inventory of the vehicle revealed a second loaded handgun, tucked between the driver's seat and the center console, a third loaded handgun, located under the passenger's seat, a container of alcohol, and a small amount of marijuana.

## Analysis

{¶ 10} In his assignment of error, appellant essentially claims that the trial court erred when it denied his motion to suppress, because the evidence was obtained during an illegal search of his vehicle. This court, in *State v. Ruffer*, 6th Dist. Fulton No. F-11-007, 2012-Ohio-4491, articulated the applicable standard of review for a trial court's denial of a motion to suppress, as follows:

> Review of a trial court's denial of a motion to suppress presents
> mixed questions of law and fact. *State v. Burnside,* 100 Ohio St.3d 152,
> 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to
> suppress, the trial court assumes the role of trier of fact and is therefore in
> the best position to resolve factual questions and evaluate the credibility of
> witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d
> 972." *Id.* An appellate court defers to a trial court's factual findings made
> with respect to its ruling on a motion to suppress where the findings are
> supported by competent, credible evidence. *Id.; State v. Brooks,* 75 Ohio
> St.3d 148, 154, 661 N.E.2d 1030 (1996). "[T]he appellate court must then
> independently determine, without deference to the conclusion of the trial

5.

court, whether the facts satisfy the applicable legal standard. *State v.*
*McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539." *State v.*
*Burnside* at ¶ 8.

*Id.* at ¶ 5.

{¶ 11} Appellant initially argues that officers lacked the requisite specific and articulable facts to conclude that appellant was engaged in criminal activity. Specifically, appellant challenges the state's claim that Donovan was justified in stopping appellant as part of an investigation arising out of Donovan's smelling burnt marijuana, because the state failed to prove that Donovan was qualified to detect and distinguish the smell of burnt marijuana.

{¶ 12} The state initially argues that because appellant's trial counsel failed to raise the qualification issue, appellant has waived the issue and may not raise it for the first time on appeal. "Legal issues which are not raised in the trial court may not generally be raised for the first time in the appellate court." *State v. Cunningham*, 2d Dist. Montgomery No. 20059, 2004-Ohio-3088, ¶ 26. "The general rule is that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *Id.* This rule applies to arguments that are not asserted either in a written motion to suppress or at the suppression hearing. *State v. Allen*, 6th Dist. Wood No. WD-16-058, 2018-Ohio-887, ¶ 25. In cases such as the one at hand, Ohio courts have deemed the issue of an officer's

6.

qualifications to detect the odor of marijuana to be waived where it was not timely raised by appellant. *See, e.g., State v. Walker*, 2012-Ohio-3303, 974 N.E.2d 1213, ¶ 32 (11th Dist.) (because there was no timely objection, any error resulting from officer's testimony regarding the odor of marijuana coming from inside a vehicle was deemed waived); *Cunningham* at ¶ 25-26 (challenge to officer's qualifications to detect odor of marijuana was waived where it was not timely raised). Because appellant in the instant case failed to challenge Donovan's qualifications in the trial court, we find that any error resulting from Donovan's testimony was, in fact, waived.

{¶ 13} Even, assuming arguendo, that appellant's objections had been timely made, we would nevertheless uphold the legality of the initial intrusion in this case. While Ohio law clearly provides that "the odor of marijuana establishes probable cause to search a vehicle only when the odor is detected by a person qualified to recognize it," *State v. Thames*, 2d Dist. Montgomery No. 26052, 2015-Ohio-626, ¶ 8, at this point in the analysis we are only considering the legality of the initial intrusion, and not the legality of the subsequent search.

{¶ 14} Focusing on the initial intrusion, we are mindful that "during a consensual encounter, the officer and citizen can engage in conversation, and a person's voluntary statements may be used against him or her, as long as the person knows that he or she is free to walk away and the police have not conveyed a message that compliance with their requests is required." *State v. Millerton*, 2d Dist. No. 26209, 2015-Ohio-34, 26 N.E.3d 317, ¶ 21. An "investigatory detention," also known as a *Terry* stop, "allows an officer to

7.

briefly stop and temporarily detain individuals in order to investigate possible criminal activity." *Id.* at ¶ 22. During a brief investigatory stop, "an officer is entitled to ask questions to confirm his suspicions that criminal activity occurred," and, further, "an officer can ask for identification or sufficient information to write a citation or to run a background check for outstanding warrants." *Id.* at ¶ 23.

{¶ 15} In *Thames*, where the defendant seemed "exceptionally nervous," and the officer "smelled an overwhelming odor of air freshener and a faint odor of marijuana," such evidence, "at a minimum, met the reasonable, articulable suspicion [of criminal activity] standard," which justified extending a traffic stop for a drug sniff, even though the officer's qualifications to detect the smell of marijuana were never specifically addressed during the suppression hearing. *Thames* at ¶ 8, 11.

{¶ 16} Here, where the officers smelled an overwhelming smell of marijuana, apparently coming from appellant's vehicle, in an otherwise sparsely populated area, and where appellant quickly locked and exited the vehicle upon the officers' arrival, we find that the initial approach -- perhaps best described as a "casual encounter" that quickly evolved into a *Terry* investigative stop -- was lawful under the circumstances, permitting the officers to conduct a routine background check for outstanding warrants.

{¶ 17} We additionally note that, in addition to the odor of marijuana, which gave rise to the officers' initial approach and temporary detention of appellant, the officers, upon reaching the vicinity of appellant's car, noticed an open container in the car. In this case, discovery of the open container provided a second, independent basis for a

8.

detention with a background/identification check. *See, State v. Brown*, 2d Dist. Montgomery No. 20336, 2004-Ohio-4058, ¶ 18 (open beer container located in car provided officer with reasonable, articulable suspicion that appellant had engaged in an open container violation, thereby providing an independent basis to request appellant's identification); *State v. Carlisle*, 4th Dist. Lawrence No. 07CA16, 2008-Ohio-744, ¶ 13 (investigative stop justified where appellant was carrying an open container of alcohol).

{¶ 18} Once the background check was conducted, revealing that there were outstanding warrants for both appellant and his passenger, the two men were lawfully arrested and taken into custody, and an inventory search of appellant's vehicle was performed. Addressing the concept of inventory searches, the Supreme Court of Ohio, in *State v. Mesa*, 87 Ohio St.3d 105, 717 N.E.2d 329 (1999), relevantly stated the following:

> Inventory searches are a 'well-defined exception to the warrant requirement of the Fourth Amendment.' *Colorado v. Bertine* (1987), 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739, 745. See, also, *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000. Inventory searches involve administrative procedures conducted by law enforcement officials and are intended to (1) protect an individual's property while it is in police custody, (2) protect police against claims of lost, stolen or vandalized property, and (3) protect police from dangerous instrumentalities. *Opperman,* 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005. Because inventory searches are administrative caretaking

9.

functions unrelated to criminal investigations, the policies underlying the Fourth Amendment warrant requirement, including the standard of probable cause, are not implicated. *Id.* at 370, 96 S.Ct. at 3097, 49 L.Ed.2d at 1006, fn. 5. See, also, *Bertine,* 479 U.S. at 371, 107 S.Ct. at 741, 93 L.Ed.2d at 745. Rather, the validity of an inventory search of a lawfully impounded vehicle is judged by the Fourth Amendment's standard of reasonableness. See *Opperman* and *Bertine, supra.*

*Id*. at 108–09. An inventory search is lawful where there is evidence to show that the decision to conduct an inventory search of a vehicle was made in good faith, and in accordance with established police inventory procedure. *See, e.g., State v. Easton*, 2016-Ohio-5516, 69 N.E.3d 1202 (8th Dist.)

{¶ 19} In reviewing the record, we find that the evidence in this case is sufficient to show that the officers' decision to conduct the inventory search of appellant's vehicle was made in good faith, following the lawful arrest of appellant and his passenger, and was in accordance with police department policy. Accordingly, we find that the officers' inventory search was lawful.

{¶ 20} For all of the foregoing reasons, we find appellant's assignment of error not well-taken. We affirm the judgment of the Lucas County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                  _____
                                                JUDGE

Gene A. Zmuda, P.J.


Myron C. Duhart, J.                 _____
CONCUR.                                               JUDGE


                                                _____
                                                JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.